1  Rollin A. Ransom (SBN 196126)
   rransom@sidley.com
2  Nicole M. Baade (SBN 335703)
   nbaade@sidley.com
3  SIDLEY AUSTIN LLP
4  350 South Grand Avenue
   Los Angeles, CA 90071
5  Telephone: (213) 896-6000
6  Facsimile: (213) 896-6600
7
   Attorneys for Defendant
8  UNIVERSAL MUSIC GROUP, INC.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11 | WILLIAM FREDERICK DURST, an          | Case No. 2:24-cv-08630-PA-AJR
   | individual; LIMP BIZKIT; FLAWLESS    |
12 | RECORDS, LLC, a California limited    | Assigned to Hon. Percy Anderson
   | liability company;                    |
13 |                                       | **DEFENDANT UNIVERSAL MUSIC**
14 |              Plaintiffs,              | **GROUP, INC.'S NOTICE OF**
   |                                       | **MOTION AND MOTION TO**
15 |        vs.                            | **DISMISS PLAINTIFFS'**
   |                                       | **COMPLAINT; MEMORANDUM OF**
16 | UNIVERSAL MUSIC GROUP, INC., a        | **POINTS AND AUTHORITIES IN**
   | Delaware corporation; and DOES 1      | **SUPPORT THEREOF**
17 | through 20, inclusive,                |
18 |              Defendants.              | Hearing Time:    1:30 p.m.
19 |                                       | Hearing Date:    January 6, 2025
   |                                       | Place:           Courtroom 9A
20 |                                       |
21 |                                       | Action Filed:    October 8, 2024

22

23

24

25

26

27

28

1  TO ALL PARTIES AND THEIR ATTORNEY OF RECORD:

2  PLEASE TAKE NOTICE that on January 6, 2025, at 1:30 p.m., or at such other

3  time as the Court may order, before the Honorable Percy Anderson, in Courtroom 9A

4  of the United States District Court for the Central District of California, located at 350

5  West 1st Street, 9th Floor, Los Angeles, California 90012, Defendant Universal Music

6  Group, Inc. ("UMG") will and hereby does move to dismiss the complaint and each of

7  the claims in this action with prejudice pursuant to Rules 12(b)(6), 8, and 9(b) of the

8  Federal Rules of Civil Procedure, on the basis that the complaint fails to state a claim

9  upon which relief can be granted and fails to allege fraud with particularity. UMG also

10  and alternatively moves to dismiss the claims arising under or relating to the "Flip

11  Agreement" identified in the complaint on *forum non conveniens* grounds, based on

12  the mandatory forum-selection clause contained in that agreement.[1]

13  This Motion is based on this Notice of Motion and Motion, the Memorandum

14  of Point and Authorities attached hereto, the concurrently-filed Request for Judicial

15  Notice, all pleadings and records on file in this case, and upon such matters as may be

16  presented at or before the hearing on this Motion.

17  This Motion was made following a conference of counsel pursuant to Local

18  Rule 7-3 on November 15, 2024.

19  Date: November 22, 2024          SIDLEY AUSTIN LLP

20                                   By: */s/Rollin A. Ransom*

21                                       Rollin A. Ransom

22                                   Attorneys for Defendant
23                                   UNIVERSAL MUSIC GROUP, INC.

---

[1] On November 18, 2024, the Court issued an Order to Show Cause "why the Court should exercise jurisdiction over the state law and declaratory relief claims asserted in the Complaint." Dkt. No. 15 (the "OSC Order") at 1. While UMG believes that this Court may properly decline to exercise supplemental jurisdiction over the state law and declaratory relief claims in this action, pursuant to the OSC Order, UMG will address that issue in UMG's Response to the OSC Order. *See id.* ("Defendants may file a Response to this Order to Show Cause by no later than December 9, 2024.").

1

# <u>TABLE OF CONTENTS</u>

2

**Page**

3

INTRODUCTION ................................................................................................ 11

4

FACTUAL BACKGROUND............................................................................... 12

5

6

STANDARD......................................................................................................... 15

7

APPLICABLE LAW ........................................................................................... 15

8

ARGUMENT ....................................................................................................... 16

9

I.    All Claims Under the Flip Agreement Are Subject to a Mandatory New York

10

Forum-Selection Clause and Must Be Dismissed. ............................................ 16

11

II.    All of Plaintiffs' Claims Fail as a Matter of Law................................................ 18

12

    A.    Plaintiffs' Rescission Claim Fails as a Matter of Law............................ 19

13

    B.    Plaintiffs' Breach of Contract Claims Fail as a Matter of Law. .............. 24

14

    C.    Plaintiffs' Implied Covenant Claims Fail as a Matter of Law.................. 26

15

16

    D.    Plaintiffs' Breach of Fiduciary Duty Claims Fails as a Matter of Law...27

17

    E.    Plaintiffs' Fraudulent Concealment and Negligent and Intentional

18

Misrepresentation Claims Fail Under Rule 9(b) and Rule 12(b)(6) and as a Matter of Law. ..................................................................................... 29

19

20

    F.    Plaintiffs' Promissory Fraud Claim Fails as a Matter of Law. ................ 30

21

    G.    Plaintiffs' Accounting Claim Fails as a Matter of Law. .......................... 31

22

    H.    Plaintiffs' Copyright Infringement Claim Fails as a Matter of Law. ...... 32

23

    I.    Plaintiffs' California Business and Professions Code § 17200 Claim Fails as a Matter of Law.................................................................................... 33

24

25

26

27

28

3

J.    Plaintiffs' Declaratory Relief Claim Fails as a Matter of Law. ...............34

CONCLUSION ..........................................................................................................35

UMG'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*34-06 73, LLC v. Seneca Ins. Co.*,
   39 N.Y.3d 44 (2022) ........................................................................... 25

*Apotex Corp. v. Hospira Healthcare India Private Ltd.*,
   No. 18-CV-4903 (JMF), 2019 WL 3066328 (S.D.N.Y. July 12, 2019) ........... 29

*ARI & Co., Inc. v. Regent Int'l Corp.*,
   273 F. Supp. 2d 518 (S.D.N.Y. 2003) ............................................... 26, 27

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................... 15, 21, 25, 30

*AT&T Corp. v. Atos IT Sols. & Servs., Inc.*,
   714 F. Supp. 3d 310 (S.D.N.Y. 2024) ............................................. 21, 29

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
   571 U.S. 49 (2013) ........................................................................... 18

*B. C. Richter Contracting Co. v. Cont'l Cas. Co.*,
   230 Cal. App. 2d 491 (1964) ............................................................. 23

*Bates v. Suntrust Mortg., Inc.*,
   No. 2:13-cv-01402-TLN-DAD, 2013 WL 6491528 (E.D. Cal. Dec.
   10, 2013) ..................................................................................... 34, 35

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................... 30

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prod., Inc.*,
   No. 1:19-CV-3766-GHW, 2021 WL 2534000 (S.D.N.Y. June 21,
   2021) ........................................................................................... 35

*Bina v. Abraxas Med. Sols.*,
   No. SACV 12-1030 JVS, 2012 WL 12892745 (C.D. Cal. Dec. 19,
   2012) ....................................................................................... 29, 30

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
   685 F. Supp. 2d 1094 (E.D. Cal. 2010) ............................................. 33

*C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*,
   419 F. Supp. 2d 419 (S.D.N.Y. 2005) .................................................................23

*Cafferty v. Scotti Bros. Recs., Inc.*,
   969 F. Supp. 193 (S.D.N.Y. 1997) .............................................................19, 20

*Caremark, L.L.C. v. New York Cancer & Blood Specialists*,
   No. 23 CIV. 8508 (NRB), 2024 WL 3413470 (S.D.N.Y. July 15,
   2024) ...................................................................................................................20

*Dayan Enterprises, Corp. v. Nautica Apparel, Inc.*,
   No. 03 CIV. 5706 (LLS), 2003 WL 22832706 (S.D.N.Y. Nov. 26,
   2003) ...................................................................................................................31

*Deutsche Bank Nat'l Trust v. Quicken Loans Inc.*,
   810 F.3d 861 (2d Cir. 2015) ..........................................................................26, 27

*Dillon v. NBCUniversal Media LLC*,
   No. CV 12-09728 SJO(AJWX), 2013 WL 3581938, *8 (C.D. Cal.
   Jun. 18, 2003) .....................................................................................................33

*In re Ditech Holding Corp.*,
   No. 19-10412 (JLG), 2021 WL 5225840 (Bankr. S.D.N.Y. Nov. 9,
   2021) ..............................................................................................................34, 35

*Edmondson v. Fox Broad. Co.*,
   No. 2:11-CV-05838-SV(WVBKX), 2011 WL 13223522 (C.D. Cal.
   Sept. 16, 2011) ....................................................................................................32

*EQT Infrastructure Ltd. v. Smith*,
   861 F. Supp. 2d 220 (S.D.N.Y. 2012) ................................................................21

*Farmers Ins. Exch. v. Super. Ct.*,
   2 Cal. 4th 377 (1992) ..........................................................................................33

*Faulkner v. Arista Records LLC*,
   602 F. Supp. 2d 470 (S.D.N.Y. 2009) ..........................................................27, 31

*Fleet v. Bank of Am. N.A.*,
   229 Cal. App. 4th 1403 (2014) ...........................................................................32

*Fosson v. Palace (Waterland), Ltd.*,
   78 F.3d 1448 (9th Cir. 1996) ..........................................................................23, 24

6

*Friedman v. U.S. Bank Nat'l Ass'n*,
No. CV16-2265-CAS(FFMX), 2016 WL 3226005 (C.D. Cal. June 6,
2016) .......................................................................................................31, 32

*Gardner Denver, Inc. v. Accurate Air Eng'g, Inc.*,
No. 2:22-CV-4408-DSF-ASX, 2024 WL 3914893 (C.D. Cal. July 5,
2024) ................................................................................................................16

*Jimison v. Am. Gen. Life Ins. Co.*,
No. 15CV01620 JAH-NLS, 2016 WL 11783678, at *6 (S.D. Cal.
Sept. 23, 2016) ...............................................................................................25

*Kahnert v. Kotick*,
No. CV 21-8968 PA, 2022 WL 2167798 (C.D. Cal. Mar. 4, 2022)
(Anderson, J.) ..................................................................................................17

*Kawczynski v. Kawczynski*,
No. 18-CV-05709-NC, 2019 WL 2503627 (N.D. Cal. June 17, 2019) .............25

*LaCross v. Knight Transp., Inc.*,
95 F. Supp. 3d 1199 (C.D. Cal. 2015) ............................................................17

*Lazar v. Hertz Corp.*,
69 Cal. App. 4th 1494 (1999) ...........................................................................33

*Linear Tech. Corp. v. Applied Materials, Inc.*,
152 Cal. App. 4th 115 (2007) ...........................................................................34

*Lyons v. Bank of Am., NA*,
No. 11-01232 CW, 2011 WL 3607608 (N.D. Cal. Aug. 15, 2011) ...................33

*Maldonado v. Valsyn, S.A.*,
No. 06 CIV. 15290 (RMB), 2009 WL 3094888 (S.D.N.Y. Sept. 23,
2009), *aff'd*, 390 F. App'x 27 (2d Cir. 2010) ...................................................20

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*,
No. 1:22-CV-1138-GHW, 2022 WL 18027555 (S.D.N.Y. Dec. 30,
2022) ................................................................................................................28

*Michel & Pfeffer v. Oceanside Properties, Inc.*,
61 Cal. App. 3d 433 (1976) ..............................................................................24

*Naruto v. Slater*,
888 F.3d 418 (9th Cir. 2018) ............................................................................12

7

*New Paradigm Software Corp. v. New Era of Networks, Inc.*,
   107 F. Supp. 2d 325 (S.D.N.Y. 2000) ................................................. 22

*Nolan v. Sam Fox Pub. Co.*,
   499 F.2d 1394 (2d Cir. 1974) ............................................................. 20

*Patton v. Forest Labs. Inc.*,
   793 F. App'x 608 (9th Cir. 2020) ....................................................... 34

*Poley v. Sony Music Ent., Inc.*,
   163 Misc. 2d 127 (Sup. Ct., N.Y. Cnty. 1994), *aff'd*, 222 A.D.2d 308
   (1st Dep't 1995) ................................................................................. 31

*Quantum Labs, Inc. v. Maxim Integrated Prod. Inc.*,
   No. 18-CV-07598-BLF, 2019 WL 1767574 (N.D. Cal. Apr. 22, 2019) ........... 35

*quasar energy group llc v. WOF SW GGP 1 LLC*,
   No. CV1802300PHXRCC(EJM), 2019 WL 325546, at *2 (D. Ariz.
   Jan. 25, 2019) .................................................................................... 18

*Rano v. Sipa Press, Inc.*,
   987 F.2d 580 (9th Cir. 1993) ........................................................ 19, 20

*Recorded Picture Co. v. Nelson Ent., Inc.*,
   53 Cal. App. 4th 350 (1997), *as modified on denial of reh'g* (Apr. 3,
   1997) .................................................................................................. 27

*Rodgers v. Roulette Recs., Inc.*,
   677 F. Supp. 731 (S.D.N.Y. 1988) ..................................................... 28

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ........................................................... 34

*Silvester v. Time Warner, Inc.*,
   1 Misc. 3d 250 (Sup. Ct., N.Y. Cnty. 2003), *aff'd*, 14 A.D.3d 430 (1st
   Dep't 2005) ........................................................................................ 27

*Sorensen v. New Koosharem Corp.*,
   No. CV 15-01088 RGK, 2015 WL 12426149 (C.D. Cal. Oct. 15,
   2015) ............................................................................................. 26, 27

*Spitzer v. Aljoe*,
   No. 13-CV-05442-MEJ, 2016 WL 3279167 (N.D. Cal. June 15,
   2016), *aff'd*, 734 F. App'x 457 (9th Cir. 2018) ................................. 22

8

*Steckman v. Hart Brewing Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ........................................................ 15

*Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ........................................................ 17

*Tanedo v. East Baton Rouge Parish Sch. Bd.*,
    No. SA CV10-01172 JAK, 2012 WL 5447959 (C.D. Cal. Oct. 4,
    2012) ............................................................................................... 21

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001) ........................................................... 21

*Tessera, Inc. v. UTAC (Taiwan) Corp.*,
    No. 10-CV-04435-EJD, 2012 WL 1067672 (N.D. Cal. Mar. 28, 2012) ............ 24

*TVT Recs. v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ............................................................. 29

*U.S. Licensing Assocs., Inc. v. Rob Nelson Co.*,
    No. 11 CV 4517 HB, 2011 WL 5910216 (S.D.N.Y. Nov. 28, 2011) ............... 25

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........................................... 21

*Vekaria v. Mthree Corp. Consulting, Ltd.*,
    No. 22 CIV. 3197 (JPC), 2024 WL 4337542 (S.D.N.Y. Sept. 27,
    2024) ............................................................................................... 19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ....................................................... 15

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ......................................................... 15

*Wang v. Massey Chevrolet*,
    97 Cal. App. 4th 856 (2002) .......................................................... 34

*Warren v. Fox Fam. Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ................................................. 20, 24

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) .......................................... 15

UMG'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Wolf v. Super. Ct.*,
    107 Cal. App. 4th 25 (2003) ................................................................................28

**Statutes**

17 U.S.C. § 411(a) ................................................................................32

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................................15, 33

Cal. Civ. Code § 1689(b)(1) ................................................................................20

Cal. Civ. Code § 1689(b)(6) ................................................................................22

**Rules**

Fed. R. Civ. P. 8 ................................................................................12, 21, 29, 30

Fed. R. Civ. P. 9(b) ................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................12, 15, 29

UMG's Notice of Motion and Motion to Dismiss Plaintiffs' Complaint

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Universal Music Group, Inc. ("UMG") respectfully submits this memorandum of points and authorities in support of its motion to dismiss the complaint filed by William Frederick Durst, Limp Bizkit, and Flawless Records, LLC (collectively "Plaintiffs").

## INTRODUCTION

Plaintiffs' complaint is based on a fallacy. Plaintiffs contend that UMG "designed and implemented royalty software and systems that were deliberately designed to conceal artists' (including Plaintiffs') royalties and keep those profits for itself," and that it was only after "Plaintiffs' business managers contacted UMG" in April 2024 that Plaintiffs "discovered this fraud." Compl. [Dkt. No. 1] ¶¶ 14, 37. But the very communications with "Plaintiffs' business manager[]" upon which Plaintiffs rely eviscerate this claim. Those communications, reflected in an e-mail string incorporated by reference in the complaint, show that over a year earlier, a Senior Director in the Royalties Department at UMG had *unilaterally and affirmatively* reached out to that same business manager—Paul Ta at Level Four Business Management LLC—and advised him of the need to "set up a vendor profile for Limp Bizkit" so that the company could "start making royalty payments" to the band. *See* Request for Judicial Notice ("RJN"), Ex. 1 at 3. In response, Mr. Ta stated that all members of Limp Bizkit but one (including Plaintiff Durst) had "sold/assigned their share" of royalties to others, and that accordingly, *no royalties were payable to Durst* or the other identified members of the band. In other words, Plaintiffs' entire narrative that UMG tried to conceal royalties is a fiction.

Mr. Ta's statement to UMG regarding the sale/assignment was apparently an error, which he realized some fifteen months later when he again communicated with UMG's Royalties Department, and Plaintiffs concede thereafter receiving *millions of dollars* in payments from UMG. Compl. ¶¶ 61–62. Plaintiffs nevertheless brought this suit alleging breach of contract and fraud on their "suspici[on]" that they are owed

1   more royalties, and seeking rescission of the parties' agreements, among other relief.

2   *Id.* ¶¶ 37, 44–45, 163.

3        Plaintiffs' claims fail for multiple reasons. As an initial matter, one of the three

4   agreements at issue in this action contains a mandatory New York forum-selection

5   clause. *Id.*, Ex. B [Dkt. No. 1-2] ¶ 20(k). Thus, all claims arising under or relating to

6   that contract must be dismissed in favor of a New York state court. But whether

7   considered here or in New York, the claims relating to that agreement—as well as the

8   claims respecting the other two contracts at issue—also fail on the merits for

9   additional, independent reasons. Among other things, Plaintiffs' rescission claim fails

10  under the very case law they cite in their complaint—on the facts here, rescission is

11  available only if there is a "total failure" in the performance of the contract, and

12  Plaintiffs concede receiving millions of dollars in payments from UMG. As to

13  Plaintiffs' breach claims, Plaintiffs' "suspici[on]" that they are owed more royalties

14  than UMG has already paid fails to satisfy the pleading requirements under Rule 8,

15  and Plaintiffs' fraud-based claims are subject to dismissal as both merely duplicative

16  of Plaintiffs' (untenable) breach claims, and because Plaintiffs have failed to satisfy

17  the pleading requirements of both Rule 8 and Rule 9(b) in any event. Plaintiffs'

18  remaining claims likewise suffer from multiple dispositive defects. For all these

19  reasons, and as discussed further below, Plaintiffs' complaint fails as a matter of law

20  and should be dismissed with prejudice.

21                      **FACTUAL BACKGROUND**[2]

22        Plaintiff Durst is the lead member of the rock band (and Plaintiff) Limp Bizkit,

23  and the 100% owner of Plaintiff Flawless Records. Compl. ¶¶ 12, 29. Plaintiffs'

24  claims revolve around three agreements. Two of those agreements involve the

25  _____
    [2] On a motion to dismiss brought under Rule 12(b)(6), this Court is to accept the well-
26  pleaded allegations of the complaint as true. *See Naruto v. Slater*, 888 F.3d 418, 421
    (9th Cir. 2018). By reciting Plaintiffs' allegations in this motion, UMG does not admit
27  them or concede their accuracy, or otherwise waive any arguments or defenses,
    including without limitation as to the propriety of the naming of UMG as the
28  defendant in this action and as to Plaintiffs' characterization of UMG as the
    counterparty (or successor) to the agreements at issue in this action.

production, manufacture, and distribution of recordings featuring Limp Bizkit: (1) a July 1996 recording agreement between Durst and other Limp Bizkit band members, on the one hand, and Flip Records, Inc. ("Flip Records"), on the other hand (the "Flip Agreement"), under which Flip Records, and later Interscope Records ("Interscope"), released the first three Limp Bizkit albums (*id.* ¶¶ 15, 22 & Ex. B); and (2) a December 2000 recording agreement between Durst and other Limp Bizkit band members, on the one hand, and Interscope, on the other hand (the "Recording Agreement"), under which Interscope released subsequent Limp Bizkit recordings (*id.* ¶¶ 15, 22–23 & Ex. A [Dkt. No. 1-1]). The third is a June 1999 "first-look" agreement between (as amended) Flawless Records, LLC ("Flawless Records"), an entity owned by Durst, on the one hand, and Interscope, on the other hand (the "Flawless Agreement"), pursuant to which Durst was tasked with finding new bands for potential release on Interscope's "Flawless Records" imprint (*id.* ¶¶ 28–30 & Ex. F [Dkt. No. 1-6]).

   Plaintiffs allege that "[o]n or about April 9, 2024, Plaintiffs' business managers contacted UMG, stating that they had not received any royalty statements from UMG, and requesting access to UMG's portal to view them." *Id.* ¶ 37. The business manager to whom Plaintiffs refer was Paul Ta of Level Four Business Management LLC. RJN, Ex. 1 at 2. Upon accessing the portal, Mr. Ta "noticed" that certain accounts showed payable balances and inquired about getting payments made. Compl. ¶ 37. Although Plaintiffs acknowledge that UMG subsequently made the payments showed as owing (*id.* ¶¶ 61–62), Plaintiffs allege "[u]pon information and belief" that "UMG had never previously set up Plaintiffs as payees because it had no intention of actually paying them," and "[h]ad Plaintiffs not discovered this fraud," UMG would have "continue[d] to avoid its payment obligations in perpetuity" (*id.* ¶ 37).

   The same e-mail communication upon which Plaintiffs rely in paragraph 37 of the complaint reflects that—contrary to both Plaintiffs' specific allegations and their overall theory of the case—over one year earlier, on January 5, 2023, a Senior

13

Director in UMG's Royalty Department affirmatively reached out to Mr. Ta to "update . . . contact information for Limp Bizkit." RJN, Ex. 1 at 4. The next day, the same Royalty Department representative advised Mr. Ta: "In order to start making royalty payments, we will need to set up a vendor profile for Limp Bizkit. I've asked our Client Services team to reach out to you in the coming weeks with the required forms." *Id.* at 3. Mr. Ta *rejected* that proposition, responding that all the Limp Bizkit members but one (including Plaintiff Durst) "have . . . sold/assigned their share [of the royalties] to various companies," such that no royalty payments were owing to *any* of those individuals (including Plaintiff Durst). *Id.*

When Mr. Ta contacted the Royalty Department again on April 9, 2024—the specific communication referenced in the complaint—he *corrected* his prior misstatement and advised that "most of the Limp Bizkit members have only assigned their respective share of publishing royalties" and he was "not aware of the band assigning their artist royalties to any other companies." *Id.* at 1. With this new information in hand, UMG then began the process of obtaining the required forms and bank information to begin paying out royalties to the band. Compl. ¶ 37.[3] On August 26, 2024, UMG paid Limp Bizkit "$1,038,321.87 in back royalties." *Id.* ¶ 61. The following day, UMG paid Flawless Records "$2,348,060 in back profit participation." *Id.* ¶ 62. UMG then indicated that all "outstanding royalties and profits" had been paid. *Id.* ¶ 63.

Despite these payments, on September 30, 2024, Plaintiffs served UMG "with a formal Notice of Rescission of the Flip Agreement, the Recording Agreement, and the Flawless Agreement (the 'Rescission Notice')." *Id.* ¶ 69 & Ex. G [Dkt. No. 1-7]. When UMG rejected the Rescission Notice, Plaintiffs filed the present action, asserting no less than fifteen state (and one federal) putative claims for relief:

---

[3] With respect to separate accountings under the Flawless Agreement, UMG acknowledged an "embarrassing" mistake in failing to earlier remit certain profit-split payments to Flawless Records (following an extended period in which the Flawless Records account had been unrecouped, and thus not payable). Compl. ¶¶ 53, 55.

rescission (Count 1), breach of contract (Counts 2, 4, 6), breach of the implied covenant of good faith and fair dealing (Counts 3, 5, 7), breach of fiduciary duty (Count 8), fraudulent concealment (Count 9), intentional and negligent misrepresentation (Counts 10, 11), promissory fraud (Count 12), accounting (Count 13), copyright infringement (Count 14), violation of California Business & Professions Code § 17200 *et seq*. (Count 15), and declaratory relief (Count 16).

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain sufficient facts that, if accepted as true, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a Rule 12(b)(6) motion, this Court can disregard unreasonable inferences, unwarranted deductions of fact, conclusory allegations, legal assertions, or facts contradicted by documents referenced in the complaint. *See Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When a pleading alleges fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "'To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1139 (N.D. Cal. 2013) (citation omitted). Even if fraud is not an element of a claim, "[w]hen an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

## APPLICABLE LAW

New York law applies to all claims arising out of or relating to the Flip Agreement, because the Flip Agreement includes a New York choice-of-law provision. *See* Compl., Ex. B ¶ 20(k) ("This Agreement shall be subject to the laws of

the State of New York applicable to contracts made and to be wholly performed therein."); *Gardner Denver, Inc. v. Accurate Air Eng'g, Inc.*, No. 2:22-CV-4408-DSF-ASX, 2024 WL 3914893, at *1 (C.D. Cal. July 5, 2024) (California has "a strong policy favoring enforcement of choice of law provisions") (alteration adopted) (citation omitted). California law applies to all claims arising out of or relating to the Flawless Agreement and the Recording Agreement. *See* Compl., Ex. F ¶ 12(e) ("THE VALIDITY, INTERPRETATION AND LEGAL EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF CALIFORNIA."); Compl., Ex. A ¶ 19.08 (same); *Gardner Denver*, 2024 WL 3914893, at *1.

## ARGUMENT

### I.    ALL CLAIMS UNDER THE FLIP AGREEMENT ARE SUBJECT TO A MANDATORY NEW YORK FORUM-SELECTION CLAUSE AND MUST BE DISMISSED.

Several of Plaintiffs' claims arise in whole or in part out of the Flip Agreement. *See* Compl. ¶ 76 (seeking rescission of Flip Agreement (Count 1)); *id.* ¶¶ 114–21 (breach of Flip Agreement (Count 4)); *id.* ¶¶ 122–26 (breach of implied covenant of good faith and fair dealing under Flip Agreement (Count 5)); *id.* ¶ 141 (breach of fiduciary duty related to royalties owed under Flip Agreement (Count 8)); *id.* ¶ 157 (fraudulent concealment of royalties owed under Flip Agreement (Count 9)); *id.* ¶ 187 (intentional misrepresentation of royalties owed under Flip Agreement (Count 10)); *id.* ¶ 196 (negligent misrepresentation of royalties owed under Flip Agreement (Count 11)); *id.* ¶ 201 (promissory fraud in inducement of Flip Agreement (Count 12)); *id.* ¶¶ 209–13 (requesting accounting under Flip Agreement (Count 13)); *id.* ¶ 221 (*inter alia*, failure to pay royalties owed under Flip Agreement (Count 15)); *id.* ¶¶ 225, 230 (requesting declaratory relief regarding recordings subject to Flip Agreement (Count 16)). However, the Flip Agreement is subject to a mandatory New York forum-selection clause. *Id.*, Ex. B ¶ 20(k) ("All claims, disputes or disagreements which may

arise out of the interpretation, performance or breach of this Agreement shall be submitted exclusively to the jurisdiction of the state courts of the State of New York or the Federal District courts located in New York City."). Accordingly, these claims must be heard in New York.

A "forum-selection clause represents the parties' agreement as to the most proper forum," and "only under *extraordinary* circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (emphasis added) (internal quotations and citations omitted). Accordingly, "a forum-selection clause [i]s controlling unless the plaintiff [makes] a strong showing that: (1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of his day in court." *Id.* (internal quotations and citations omitted).

No such extraordinary circumstances exist here. In particular, while Plaintiffs generally allege promissory fraud with respect to the Flip Agreement (Compl. ¶ 201 (Count 12)), they make no allegation that the *forum-selection clause itself* was the product of fraud, which is what is required. *See, e.g.*, *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1204 (C.D. Cal. 2015) ("[A] party seeking to avoid enforcement of the forum selection clause under the first exception must show that the inclusion of the *clause itself* into the agreement was improper; it is insufficient to allege that the agreement as a whole was improperly procured.") (emphasis in original); *see also Kahnert v. Kotick*, No. CV 21-8968 PA (JEMX), 2022 WL 2167798, at *2 (C.D. Cal. Mar. 4, 2022) (Anderson, J.) ("[A] party opposing enforcement of a forum selection clause must show that the inclusion of the forum clause itself was the product of fraud or overreaching.") (internal quotations and citation omitted).

In addition, while it is true that the claims arising under the Recording Agreement and the Flawless Agreement must be heard in California due to a mandatory California forum-selection clause in those agreements,[4] this fact likewise does not present an extraordinary circumstance that can support contravening the parties' clear contractual intent with respect to the Flip Agreement. *See quasar energy group llc v. WOF SW GGP 1 LLC*, No. CV1802300PHXRCC(EJM), 2019 WL 325546, at *2 (D. Ariz. Jan. 25, 2019) ("The parties explicitly agreed to two separate forum selection clauses and knew that this circumstance could occur. . . . [T]he parties must now deal with the problem they created with two different lawsuits proceeding in two different forums.") (internal quotations and citation omitted).

All of the claims arising under the Flip Agreement are state law claims, and Plaintiffs effectively concede that there is no diversity jurisdiction. *See* Compl. ¶¶ 1–4, 10. In light of this fact, there is no basis for transferring such claims to a *federal* court in New York; instead, those claims must be dismissed under the doctrine of *forum non conveniens*, subject to Plaintiffs electing to refile them in state court in New York. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60, n.8 (2013) (noting that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," and that "a successful motion under *forum non conveniens* requires dismissal of the case"). Thus, this Court should dismiss Counts 4 and 5 entirely because they relate solely to the Flip Agreement, and Counts 1, 8–13, and 15–16 to the extent they arise under or relate to the Flip Agreement.

## II. ALL OF PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW.

Even if the Court denies UMG's motion to dismiss the claims arising under the Flip Agreement on *forum non conveniens* grounds, those claims—as well as the

---

[4] *See* Compl., Ex. A ¶ 19.08 ("THE CALIFORNIA COURTS (STATE AND FEDERAL), ONLY, WILL HAVE JURISDICTION OF ANY CONTROVERSIES REGARDING THIS AGREEMENT . . . ."); Ex. F ¶ 12(e) (same).

1    balance of Plaintiffs' claims—fail as a matter of law. Accordingly, the Court should
2    dismiss the entire complaint with prejudice.

3        **A.    Plaintiffs' Rescission Claim Fails as a Matter of Law.**

4        Rescission is an "extraordinary remedy," *Vekaria v. Mthree Corp. Consulting,*
5    *Ltd.*, No. 22 CIV. 3197 (JPC), 2024 WL 4337542, at *18 (S.D.N.Y. Sept. 27, 2024),
6    and Plaintiffs' rescission claim (Count 1) fails for multiple reasons. In their complaint,
7    Plaintiffs seek rescission based on three purported grounds: (1) material breach
8    (Compl. ¶¶ 74–81); (2) fraud (*id.* ¶¶ 82–95); and (3) public policy (*id.* ¶¶ 96–99).
9    However, none of these grounds supports rescission as a matter of law.

10       *First*, under both California law (applicable to the Recording Agreement and
11   the Flawless Agreement) and New York law (applicable to the Flip Agreement), the
12   breach of a royalty or similar licensing agreement will support rescission only where
13   there has been "a *total* failure in the performance of the contract," *Rano v. Sipa Press,*
14   *Inc.*, 987 F.2d 580, 586 (9th Cir. 1993) (emphasis added), *i.e.*, where "the failure to
15   pay royalties is *total*," *Cafferty v. Scotti Bros. Recs., Inc.*, 969 F. Supp. 193, 205
16   (S.D.N.Y. 1997) (emphasis added), *citing Nolan v. Sam Fox Pub. Co.*, 499 F.2d 1394,
17   1397–99 (2d Cir. 1974).[5] Plaintiffs have not alleged such a *total* failure to make
18   payments under the agreements at issue. On the contrary, Plaintiffs *admit* that UMG
19   paid Plaintiffs over $3 million under those agreements in August 2024 alone—*before*
20   Plaintiffs sent their putative "Rescission Notice" and *before* this lawsuit was filed.
21   Compl. ¶¶ 37, 55, 61–63. Moreover, the agreements themselves (attached to and
22   incorporated by reference in the complaint) reflect earlier payment of millions more in
23   advance payments to Plaintiffs. *See id.*, Ex. A ¶ 6; *id.*, Ex. B ¶ 6; *id.*, Ex. C [Dkt. No.
24   1-3] ¶ 5; *id.*, Ex. D [Dkt. No. 1-4] ¶ 6; *id.*, Ex. E [Dkt. No. 1-5] ¶ 1; *id.*, Ex. F ¶ 4 &
25   Amendment ¶ 16. Plaintiffs therefore cannot obtain rescission based on a material

26

27   ───────────────
     [5] Notably, *Rano* is the case that Plaintiffs themselves cite in their complaint as the
     ostensible *basis* for their rescission claim. *See* Compl. ¶ 74. Not only does *Rano* not
28   support Plaintiffs' claim, it establishes why that claim must be dismissed with
     prejudice.

1    breach. *See, e.g.*, *Nolan*, 499 F.2d at 1399 (denying rescission where 26% of royalties

2    had been paid); *Cafferty*, 969 F. Supp. at 205 (denying recission where "at least partial

3    payment of the royalties due" had been paid); *Rano*, 987 F.2d at 586 (denying

4    rescission where 86.85% of one type of royalties had been paid and 99.99% of another

5    type had been paid); *see also Maldonado v. Valsyn, S.A.*, No. 06 CIV. 15290 (RMB),

6    2009 WL 3094888, at *4 (S.D.N.Y. Sept. 23, 2009) (denying rescission where

7    plaintiffs "received all of the advances under the Contracts, which were paid against

8    any royalties earned"), *aff'd*, 390 F. App'x 27 (2d Cir. 2010); *Warren v. Fox Fam.*

9    *Worldwide, Inc.*, 328 F.3d 1136, 1143 (9th Cir. 2003) ("alleged failure to pay royalties

10    does not constitute a total failure of performance").

11            *Second*, under both California and New York law, in order to rescind a contract

12    on the basis of fraud, a party must allege "fraud in the inducement of the contract."

13    *Caremark, L.L.C. v. New York Cancer & Blood Specialists*, No. 23 CIV. 8508 (NRB),

14    2024 WL 3413470, at *13 (S.D.N.Y. July 15, 2024) (citation omitted); *see also* Cal.

15    Civ. Code § 1689(b)(1) ("A party to a contract may rescind the contract . . . [i]f the

16    consent of the party rescinding . . . was . . . obtained through duress, menace, fraud, or

17    undue influence . . . ."). As an initial matter, most of Plaintiffs' allegations of fraud in

18    support of their rescission claim regard UMG's purported actions *during* the terms of

19    the agreements. *See, e.g.*, Compl. ¶ 85 (alleging UMG "provided Plaintiffs with

20    fraudulent royalty or profit statements"); *id.* ¶ 89 (same); *id.* ¶ 87 (alleging UMG

21    "designed and implemented a system that intentionally and wrongfully concealed

22    Plaintiffs' positive royalty balances from them"); *id.* ¶¶ 90–93 (alleging UMG

23    committed fraud by "concealing and/or misrepresenting" facts to Plaintiffs regarding

24    royalties, recoupment costs, and royalty accounts). These allegations cannot support

25    rescission, as they do not even purport to reflect fraud in the inducement of the

26    agreements. *Caremark*, 2024 WL 3413470, at *13; Cal. Civ. Code § 1689(b)(1).

27            Plaintiffs *do* summarily allege that "Defendants fraudulently induced Plaintiffs

28    into the Flip Agreement, the Recording Agreement and the Flawless Agreement by

luring them in with promise to pay Plaintiffs significant amounts of royalties and profits, without any intention of actually doing so." Compl. ¶ 86. But this allegation likewise cannot support Plaintiffs' rescission claim. It consists of only "mere conclusory statements" that do not meet the requirements of Rule 8, *Iqbal*, 556 U.S. at 678, let alone the heightened pleading requirements of Rule 9(b). As one court noted, in dismissing a counterclaim for fraud under similar circumstances:

> [Counterclaimant/]Defendant advances the conclusory allegation that Plaintiffs had no intention of paying Defendant under the . . . contracts. This is insufficient under Rule 8. Defendant may not transform its contract claim into one of promissory fraud by simply pleading, without more, that Plaintiffs never intended to perform on the contracts; something more than nonperformance is required to establish a claim of promissory fraud.

*Tanedo v. East Baton Rouge Parish Sch. Bd.*, No. SA CV10-01172 JAK, 2012 WL 5447959, at *9 (C.D. Cal. Oct. 4, 2012); *see also UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1108–09 (C.D. Cal. 2015) (same).

Separately, with respect to the Flip Agreement in particular, New York law expressly precludes a fraudulent inducement claim where—as here—Plaintiffs' fraud claim arises out of the same facts as the breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties. *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 234 (S.D.N.Y. 2012); *see also Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("[S]imply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim."); *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 330–31 (S.D.N.Y. 2024) (denying leave to amend to add a fraudulent inducement

1  claim where it "amount[ed] to no more than a claim that [the defendant] never

2  intended to perform the contract according to its terms").[6]

3      *Third*, Plaintiffs' assertion that rescission is permitted because "enforcement

4  would be prejudicial to the public interest," Compl. ¶ 96, *citing* Cal. Civ. Code

5  § 1689(b)(6), likewise fails as a matter of law. To support a rescission claim under

6  Section 1689(b)(6), Plaintiffs must allege facts supporting a finding "that if the Court

7  did not rescind the agreement[s] [then the] public would be harmed," *e.g.*, that the

8  agreements "involve[] a large number of people [or] effects to persons outside the

9  parties to the [agreements]," or that there are "potential health, environmental,

10  financial, or governmental concerns implicated by the [agreements]." *Spitzer v. Aljoe*,

11  No. 13-CV-05442-MEJ, 2016 WL 3279167, at *14 (N.D. Cal. June 15, 2016), *aff'd*,

12  734 F. App'x 457 (9th Cir. 2018). They have not done so, and cannot do so—

13  Plaintiffs' effort to reshape this private dispute as implicating a generic "public policy

14  in favor of timely paying workers," Compl. ¶ 97, is woefully inadequate to allege

15  harm to the public interest, *Spitzer*, 2016 WL 3279167, at *13–14 (denying motion to

16  rescind settlement agreement because "settlement agreement d[id] not implicate

17  public interest in a particularized way" even where the defendants' actions regarding a

18  receivership "do not appear to be in the best interests of the goals of that particular

19  receivership or of receiverships in general").

20      *Fourth*, Plaintiffs' claim for rescission as to the Flip Agreement fails for the

21  additional reason that, under New York law, rescission is not available where

22  monetary damages are an adequate remedy. *New Paradigm Software Corp. v. New

23  Era of Networks, Inc.*, 107 F. Supp. 2d 325, 330 (S.D.N.Y. 2000) (dismissing

24  rescission claim where plaintiff "asserted no reason why damages would not be an

25  _____

26  [6] Plaintiffs' allegation is particularly nonsensical with respect to the Flip Agreement in any event. As Plaintiffs themselves concede, the Flip Agreement was negotiated and

27  originally entered into between Limp Bizkit and Flip Records, Inc., an independent third party to whose interest Interscope later succeeded. Compl. ¶¶ 15–16. By

28  Plaintiff's own allegations, UMG was not a party to those negotiations and could not have fraudulently induced Limp Bizkit's consent to the agreement.

adequate remedy"); *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 436 (S.D.N.Y. 2005) (same). Plaintiffs' claims boil down to a dispute over alleged royalty underpayments that can be remedied by monetary damages, rendering rescission unavailable as a matter of law.

*Fifth*, and finally, Plaintiffs waived by contract any right to rescind the Recording Agreement or the Flawless Agreement. In each agreement, the relevant Plaintiff agreed as follows: "[Y]ou will not have any right to seek termination of this Agreement or avoid the performance of your obligations under it by reason of any such claim [regarding royalty accounting]." Compl., Ex. A ¶ 11.04; *id.*, Ex. F ¶ 17(c)(iii) (same). In the same provisions, Plaintiffs agreed that recovery of royalties is the only remedy for a suit, such as this one, regarding royalty accounting. *Id.*, Ex. A ¶ 11.04 ("If you commence suit on any controversy or claim concerning royalty accountings rendered to you under this Agreement, the scope of the proceeding will be limited to determination of the amount of the royalties due for the accounting periods concerned, and the court will have no authority to consider any other issues or award any relief except recovery of any royalties found owing. Your recovery of any such royalties will be the sole remedy available to you by reason of any claim related to Interscope's royalty accountings."); *id.*, Ex. F ¶ 17(c)(iii) (same).[7] "[I]n California 'a clear and unambiguous contractual provision providing for an exclusive remedy for breach will be enforced.'" *Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448, 1455 (9th Cir. 1996) (citation omitted). And California courts have routinely found similar provisions to constitute a valid "advance waiver of any right to rescind." *B. C. Richter Contracting Co. v. Cont'l Cas. Co.*, 230 Cal. App. 2d 491, 501 (1964) (provision requiring continued performance on part of subcontractor in the event of any dispute or controversy "was an advance waiver on any right to rescind after partial

---

[7] These provisions contain an exception where an "item in a royalty accounting" is "fraudulently misstated." Compl., Ex. A ¶ 11.04; *id.*, Ex. F ¶ 17(c)(iii). As discussed herein, Plaintiffs have not adequately alleged any fraud. *See supra* at 20–22; *infra* §§ II.E–F.

1  performance" and made "a breach of contract action the subcontractor's exclusive

2  remedy"); *Michel & Pfeffer v. Oceanside Properties, Inc.*, 61 Cal. App. 3d 433, 442

3  (1976) (contractual provision that "extension of time shall be the sole remedy of

4  Subcontractor" "was an advance waiver of any right to rescind") (alteration adopted)

5  (emphasis omitted) (internal quotations and citations omitted); *see also Fosson*, 78

6  F.3d at 1455 (finding "no right to rescind as a matter of law by virtue of his

7  [contractual] waiver" of "right to rescind or terminate the agreement"); *Warren*, 328

8  F.3d at 1143 (dismissing claim for rescission in part because agreements "provided

9  that money damages would remedy any breach, and that rescission was not

10  available").

11      For all these reasons, Plaintiffs' rescission claim should be dismissed with

12  prejudice.

13      **B.    Plaintiffs' Breach of Contract Claims Fail as a Matter of Law.**

14      Plaintiffs' claims for breach of contract (Counts 2, 4, and 6) essentially boil

15  down to two alleged breaches: (1) underpayment of royalties; and (2) failure to

16  provide all royalty statements. *See* Compl. ¶¶ 105, 119, 132. Neither of these

17  purported breaches states a claim for relief.

18      As to Plaintiffs' first theory of breach, Plaintiffs admit that in August 2024,

19  UMG paid over $3 million, the total amounts that UMG's records showed were due at

20  that time. *Id.* ¶¶ 37, 55, 61–63. Their only remaining claim for underpayment of

21  royalties is based on their "suspici[on]" that they are owed additional royalties. *Id.*

22  ¶ 44 (alleging sums paid to Limp Bizkit "are suspected to be only a fraction of what is

23  truly owed"); *id.* ¶ 45 (alleging royalty statements are "highly suspicious"). In putative

24  support, Plaintiffs allege conclusory statements "on information and belief" that UMG

25  "will not be able to substantiate the $43 million [in recoupable costs] because it is

26  grossly overinflated" and that "they have been grossly underpaid." *Id.* ¶¶ 68, 71.

27  These allegations are insufficient to state a claim based on an alleged underpayment of

28  royalties. *See, e.g.*, *Tessera, Inc. v. UTAC (Taiwan) Corp.*, No. 10-CV-04435-EJD,

24

2012 WL 1067672, at *2 (N.D. Cal. Mar. 28, 2012) ("The complaint does state that [defendant] owes royalties . . . but does not say what the royalties are owed for. The bare statement that royalties are owed amounts to a legal conclusion which, under *Iqbal* is insufficient to state a claim."); *U.S. Licensing Assocs., Inc. v. Rob Nelson Co.*, No. 11 CV 4517 HB, 2011 WL 5910216, at *4–5 (S.D.N.Y. Nov. 28, 2011) (dismissing breach of contract claim where plaintiff's only theory was that it had been underpaid royalties in one year and therefore must have been underpaid royalties in another year); *Jimison v. Am. Gen. Life Ins. Co.*, No. 15CV01620 JAH-NLS, 2016 WL 11783678, at *6 (S.D. Cal. Sept. 23, 2016) (dismissing claims for breach of contract and breach of implied covenant of good faith and fair dealing where "Plaintiff's allegations in support of his claim boil down to an assertion that Plaintiff would like discovery on the off-chance that he was underpaid"); *see also Iqbal*, 556 U.S. at 678 ("mere conclusory statements" inadequate to state claim).[8] This is especially true where all three agreements give Plaintiffs the right to audit Interscope's books and records to determine whether additional royalties are owed (Compl., Ex. A ¶ 11.03; *id.*, Ex. B, ¶ 8(c); *id.*, Ex. F, ¶ 17(5)(c)(ii)), and Plaintiffs have failed to take advantage of that right before filing this lawsuit.

As to Plaintiffs' second theory of breach, Plaintiffs have not alleged any damages—an element of a claim for breach of contract, *Kawczynski v. Kawczynski*, No. 18-CV-05709-NC, 2019 WL 2503627, at *2 (N.D. Cal. June 17, 2019); *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022)—resulting from the alleged failure to timely provide royalty statements. Nor could Plaintiffs allege such damages resulting from the alleged failure to timely provide statements, particularly where

---

[8] While Plaintiffs note that on various occasions, positive balances in one account were offset by negative balances from another account (*see, e.g.*, Compl. ¶¶ 48–49), they ignore the fact that the Recording Agreement expressly permitted Interscope to "recoup Advances from royalties to be paid to or on your behalf pursuant to this Agreement *or any other agreement*" (*id.*, Ex. A ¶ 14.01(a) (emphasis added)), and that the provision of "Flip Amendment I" that restricted such cross-account recoupment was eliminated in "Flip Amendment II" (*see id.* ¶ 18; *id.*, Ex. C ¶ 6 (amending paragraph 7(c) of the Flip Agreement to restrict cross-account recoupment); *id.*, Ex. D ¶ 7 (deleting and replacing paragraph 7 of the Flip Agreement)).

recovery of royalties due is the "sole remedy" under both the Recording Agreement and the Flawless Agreement. Compl., Ex. A ¶ 11.04 ("If you commence suit on any controversy or claim concerning royalty accountings rendered to you under this Agreement, the scope of the proceeding will be limited to determination of the amount of the royalties due for the accounting periods concerned, and the court will have no authority to consider any other issues or award any relief except recovery of any royalties found owing. Your recovery of any such royalties will be the sole remedy available to you by reason of any claim related to Interscope's royalty accountings."); *id.*, Ex. F ¶ 17(c)(iii) (same).

Plaintiffs' claims for breach of contract therefore fail as a matter of law and should be dismissed.

### C.    Plaintiffs' Implied Covenant Claims Fail as a Matter of Law.

Plaintiffs' implied covenant claims (Counts 3, 5, and 7) fail because they are entirely duplicative of Plaintiffs' breach of contract claims. As to the Flip Agreement, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (internal quotations and citation omitted). Accordingly, when breach of contract and implied covenant claims "arise from the same facts and seek the identical damages for each alleged breach," the implied covenant claim is properly dismissed as duplicative. *Deutsche Bank Nat'l Trust v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015). And as to the Recording Agreement and the Flawless Agreement, California law is the same: "If a plaintiff's allegations [in support of an implied covenant claim] merely rely on the same alleged acts and seek the same damages already sought in a companion claim for breach of contract, the allegations may be disregarded as superfluous" and the implied covenant claim dismissed. *Sorensen v. New Koosharem Corp.*, No. CV 15-01088 RGK (PJWx), 2015 WL 12426149, at *6 (C.D. Cal. Oct. 15, 2015).

Here, Plaintiffs' implied covenant and breach of contract claims are premised on the same allegations, *i.e.*, that UMG failed to properly account to Plaintiffs under the agreements at issue—indeed, there is no material difference between the breach claims, on the one hand, and the implied covenant claims, on the other hand. *Compare, e.g.*, Compl. ¶¶ 100–08 *with id.* ¶¶ 109–13. As Plaintiffs have not asserted any "allegations different than those underlying the accompanying breach of contract claim," and seek the same relief through both claims, the implied covenant claims should be dismissed. *ARI & Co.*, 273 F. Supp. 2d at 522; *see also Deutsche Bank*, 810 F.3d at 869 (affirming dismissal of implied covenant claim where allegations that defendant knowingly sold defective loans arose from the same facts and sought the same remedy as plaintiff's breach of contract claim); *Sorensen*, 2015 WL 12426149, at *6 (dismissing implied covenant counterclaim where "the alleged conduct giving rise to this claim is the same conduct giving rise to [counterclaimant's] other breach of contract claims").

### D.    Plaintiffs' Breach of Fiduciary Duty Claims Fails as a Matter of Law.

Plaintiffs' claim for breach of fiduciary duty (Count 8) likewise fails to state a claim. With respect to the recording agreements at issue (*i.e.*, the Flip Agreement and the Recording Agreement), under both New York and California law, "an artist's assignment of rights to a record company in exchange for royalties is contractual and does not create a fiduciary relationship or duty." *Silvester v. Time Warner, Inc.*, 1 Misc. 3d 250, 257 (Sup. Ct., N.Y. Cnty. 2003), *aff'd*, 14 A.D.3d 430 (1st Dep't 2005) (finding no fiduciary duty between artist and record company); *Recorded Picture Co. v. Nelson Ent., Inc.*, 53 Cal. App. 4th 350, 370 (1997), *as modified on denial of reh'g* (Apr. 3, 1997) ("[T]he typical distribution contract, negotiated at arm's length, does not create a fiduciary relationship between the owner of a product and the distributor."); *see also Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 481–83 (S.D.N.Y. 2009) (dismissing breach of fiduciary claim in light of "overwhelming tide of legal authority" rejecting the existence of a fiduciary relationship between

recording artists and record labels); *Wolf v. Super. Ct.*, 107 Cal. App. 4th 25, 27, 30–33 (2003) (affirming dismissal of breach of fiduciary claim, holding author's right to contingent compensation and defendant's exclusive control over revenues did not give rise to a fiduciary relationship); *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 1:22-CV-1138-GHW, 2022 WL 18027555, at *10–11 (S.D.N.Y. Dec. 30, 2022) (dismissing fiduciary duty claim alleged based on 16-year artist and publisher relationship); *Rodgers v. Roulette Recs., Inc.*, 677 F. Supp. 731, 739 (S.D.N.Y. 1988) ("[T]he fact that [defendants] collected royalties or fees which it had an obligation to pass on to plaintiff did not make them plaintiff's fiduciaries."). Similarly, profit-sharing agreements that do not contain a loss-sharing provision (like the Flawless Agreement) do not establish a joint venture giving rise to a fiduciary relationship. *See, e.g.*, *Wolf*, 107 Cal. App. 4th at 27, 30–33 (dismissing fiduciary duty claim because agreement to share profits or revenue is not inherently fiduciary in nature).

The absence of any fiduciary duty here is particularly evident in light of the agreements' affirmative *disclaimers* of any special relationship between the parties—in *all* of the agreements, each of the contracting Plaintiffs acknowledged that he/it was acting as an independent contractor, and not as a partner, agent, or employee. *See* Compl., Ex. A ¶ 19.09 ("In entering this Agreement and in providing services pursuant hereto, you have and shall have the status of independent contractors and nothing herein contained shall contemplate or constitute you as Interscope's agents or employees."); *id.*, Ex. B ¶ 20(g) ("Nothing contained or implied herein shall be deemed to give rise to the relationship of a partnership between the parties hereto."); *id.*, Ex. F ¶ 12(g) ("In entering into this Agreement, and in providing services pursuant hereto, you and the Principal have and shall have the status of independent contractors and nothing herein contained shall contemplate or constitute you or the Principal as our agents or employees."). Plaintiffs' claim for breach of fiduciary duty therefore should be dismissed.

E.    **Plaintiffs' Fraudulent Concealment and Negligent and Intentional Misrepresentation Claims Fail Under Rule 9(b) and Rule 12(b)(6) and as a Matter of Law.**

Plaintiffs' claims for fraudulent concealment (Count 9), intentional misrepresentation (Count 10), and negligent misrepresentation (Count 11) each suffer from at least two defects, *either* of which is sufficient to warrant dismissal.

*First*, the claims should be dismissed because they "arise[] out of the same facts as [Plaintiffs'] breach of contract claim[s]" and are thus entirely duplicative of those claims. *See Bina v. Abraxas Med. Sols.*, No. SACV 12-1030 JVS (ANX), 2012 WL 12892745, at *5 (C.D. Cal. Dec. 19, 2012) (dismissing fraud and negligent misrepresentation claims as duplicative of contract claim, noting "sole remedy is for breach of contract"). "Courts have found fraudulent concealment claims" and misrepresentation claims "insufficiently distinct from breach of contract claims where," as here, "the alleged misrepresentations directly concern a party's performance under the agreement." *AT&T Corp.*, 714 F. Supp. 3d at 334 (dismissing fraudulent concealment claim); *Apotex Corp. v. Hospira Healthcare India Private Ltd.*, No. 18-CV-4903 (JMF), 2019 WL 3066328, at *5 (S.D.N.Y. July 12, 2019) (dismissing a claim for fraudulent concealment as duplicative of contract claim where "the alleged harm remains grounded in [the defendant's] dishonesty about its supply, a matter covered by the Agreement"); *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 91 (2d Cir. 2005) (dismissing a claim of fraudulent concealment where the "non-disclosure of collateral aims . . . were not distinct fraudulent misrepresentations but, rather, were allegations about defendants' states of minds used to support the contention that they intended to breach the contract (*i.e.* the motives for the breach)").

*Second*, even if these claims were not barred as duplicative, Plaintiffs have failed to meet the pleading standards of either Rule 8 or Rule 9(b). As to fraudulent concealment, Plaintiffs allege that UMG failed to disclose that "Plaintiffs were entitled to royalties wrongfully withheld by [UMG]" and that UMG "had no intention

29

1   of actually paying such royalties until Plaintiffs asserted their rights." Compl. ¶ 146.

2   The latter allegation is insufficient for the same reasons stated above with respect to

3   Plaintiffs' fraudulent inducement claim. *See supra* at 20–22. And the former is belied

4   by, among other things, the fact that over a year before Plaintiffs' "discovery" of

5   allegedly "concealed" royalties (Compl. ¶ 37), UMG affirmatively and unilaterally

6   reached out to Limp Bizkit's representative so that it could begin making royalty

7   payments to the band, and was instead informed by him that all members of Limp

8   Bizkit but one (including Plaintiff Durst) had assigned their royalty shares to others,

9   and were therefore not entitled to *any* royalty payments from UMG. *See* RJN, Ex. 1 at

10  3–4. Particularly in light of this email, Plaintiffs' allegations do not "give rise to a

11  plausible inference" that UMG intentionally concealed that royalties were owed. *See*

12  *Iqbal*, 556 U.S. at 682. Similarly, as to Plaintiffs' intentional and negligent

13  misrepresentation claims, the "facts" ostensibly underlying those claims—that UMG's

14  royalty accounting is "highly suspicious" and Plaintiffs "suspect[]" the amount UMG

15  paid "to be only a fraction of what is truly owed." Compl. ¶¶ 163, 192—do not satisfy

16  Rule 8, let alone Rule 9(b). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

17  ("The pleading must contain something more than a statement of facts that merely

18  creates a *suspicion* of a legally cognizable right of action.") (alterations adopted)

19  (emphasis added) (internal quotations and citations omitted); *Bina*, 2012 WL

20  12892745, at *5 ("impermissible" to plead "fraud-based claims" on "information and

21  belief").

22      **F.    Plaintiffs' Promissory Fraud Claim Fails as a Matter of Law.**

23      Plaintiffs' "promissory fraud" claim (Count 12), which alleges only that

24  "Defendants had no intention of actually performing these promises and paying

25  Plaintiffs any royalties or profit shares at the time these promises were made," Compl.

26  ¶ 202, is simply a repackaged version of the "fraudulent inducement" theory that they

27  advance in support of their untenable rescission claim. *Compare id.* ¶¶ 201–02 *with id.*

28

1 | ¶ 86. It fails for the same reasons, *see supra* at 20–22, and should therefore be
2 | dismissed.

3 | **G.    Plaintiffs' Accounting Claim Fails as a Matter of Law.**

4 | To maintain an accounting claim under New York law, Plaintiffs must allege a
5 | fiduciary relationship. *Faulkner*, 602 F. Supp. 2d at 484 ("Proof of a fiduciary duty is
6 | a mandatory element of an accounting claim under New York law."). As discussed
7 | above, Plaintiffs do not adequately allege a fiduciary relationship with UMG, nor
8 | could they. *See supra* § II.D. Plaintiffs' accounting claim (Count 13) therefore fails as
9 | a matter of law with respect to the Flip Agreement. *See Faulkner*, 602 F. Supp. 2d at
10 | 484 (dismissing recording artists' accounting claim against record company due to
11 | absence of fiduciary relationship); *Poley v. Sony Music Ent., Inc.*, 163 Misc. 2d 127,
12 | 131 (Sup. Ct., N.Y. Cnty. 1994), *aff'd*, 222 A.D.2d 308 (1st Dep't 1995) (same).[9]

13 | Under California law, "[t]o properly plead a relationship other than a fiduciary
14 | duty that could give rise to a claim for an accounting, [p]laintiff must allege at least
15 | that [defendant] was in control of some aspect of [p]laintiff's business for some period
16 | of time, was [p]laintiff's trusted agent, caused a loss to [p]laintiff through specific
17 | misconduct, and is now liable to [p]laintiff for the damages resulting from that
18 | misconduct." *Friedman v. U.S. Bank Nat'l Ass'n*, No. CV16-2265-CAS(FFMX), 2016
19 | WL 3226005, at *6 (C.D. Cal. June 6, 2016). Plaintiffs have failed to plead these
20 | elements. Among other things, Plaintiffs have not pled (nor could they) that UMG is
21 | "in control of" Plaintiffs' business or that UMG is Plaintiffs' agent; indeed, the
22 | express provisions of *all* three agreements are to the contrary. *See* Compl., Ex. A
23 | ¶ 19.09 (Limp Bizkit is independent contractor; no agency relationship); *id.*, Ex. B
24 | ¶ 20(g) (Limp Bizkit is independent contractor; no partnership); *id.*, Ex. F ¶ 12(g)
25 | (Flawless Records and Durst are independent contractors; no agency relationship).

---

26 | [9] Moreover, and in any event, an accounting claim cannot be maintained under New
27 | York law where there is an "adequate legal remedy," and "a damages suit for breach
    | of contract . . . provides an adequate legal remedy." *Dayan Enterprises, Corp. v.*
    | *Nautica Apparel, Inc.*, No. 03 CIV. 5706 (LLS), 2003 WL 22832706, at *1 (S.D.N.Y.
28 | Nov. 26, 2003) (dismissing accounting claim).

1    Moreover, "[a]n action for accounting is not available where the plaintiff alleges the
2    right to recover a sum certain *or a sum that can be made certain by calculation*." *Fleet*
3    *v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1413 (2014) (emphasis added) (internal
4    quotations and citation omitted). While UMG disputes Plaintiffs' claim that they have
5    been underpaid, any such underpayment could readily "be made certain by
6    calculation." For these reasons, Plaintiffs' accounting claim as to the Recording
7    Agreement and the Flawless Agreement fails as a matter of law. *Friedman*, 2016 WL
8    3226005, at *6 (dismissing accounting claim due to absence of a fiduciary relationship
9    or circumstances indicating defendant's control over plaintiff's business); *Fleet*, 229
10    Cal. App. 4th at 1414 (affirming dismissal of accounting claim where plaintiffs'
11    alleged overpayment to defendant bank "will constitute an element of their damages").

12        **H.    Plaintiffs' Copyright Infringement Claim Fails as a Matter of Law.**

13        Plaintiffs' claim for copyright infringement (Count 14) is entirely derivative of
14    their claim for rescission. Compl. ¶ 216 ("[B]ecause the Flip Agreement, Recording
15    Agreement, and Flawless Agreement have been rescinded, and Plaintiffs have not
16    otherwise granted Defendants with permission to sell, distribute and exploit the
17    Master Recordings, such acts constitute copyright infringement."). However, because
18    Plaintiffs' rescission claim fails as a matter of law, *see supra* § II.A, Plaintiffs'
19    copyright infringement claim fails as well.

20        Plaintiffs' copyright infringement claim also fails for the independent reason
21    that Plaintiffs fail to allege registration of the copyrights in the Master Recordings that
22    are the subject of that claim. *See* 17 U.S.C. § 411(a) ("[N]o civil action for
23    infringement of the copyright in any United States work shall be instituted until
24    preregistration or registration of the copyright claim has been made in accordance
25    with this title."); *Edmondson v. Fox Broad. Co.*, No. 2:11-CV-05838-SV(WVBKX),
26    2011 WL 13223522, at *2 (C.D. Cal. Sept. 16, 2011) ("[I]n the Ninth Circuit, a
27    copyright plaintiff must allege that the U.S. Copyright Office received plaintiff's
28    complete application prior to filing a complaint as 'an element of an infringement

claim.'"), *quoting Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 615, 621–22 (9th Cir. 2010).

**I.    Plaintiffs' California Business and Professions Code § 17200 Claim Fails as a Matter of Law.**

In their Fifteenth Cause of Action, Plaintiffs repeat their prior allegations and assert that "[t]hese acts constitute unlawful, unfair and/or fraudulent business practices and unfair competition under Sections 17200, et seq., of the California Business and Professions Code" (the "UCL"). Compl. ¶ 222. Plaintiffs fail to state a claim under *any* prong of the UCL.

To state an "unlawful" prong claim, Plaintiffs must adequately plead that UMG violated a law other than the UCL. *See Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992). Plaintiffs have not done so. First, as discussed above, Plaintiffs have failed to state a claim with respect to their other putative causes of action. This failure is fatal to the "unlawful" prong claim because "[t]he lack of an actionable [predicate] violation underlying [a plaintiff's] *unlawful* business practices claim necessarily defeats that aspect of his UCL cause of action." *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1507 (1999).

Moreover, isolated common law violations cannot serve as a predicate for an "unlawful" prong claim in any event. "California courts have held that a breach of contract is not itself 'unlawful' conduct for purposes of California's UCL. This is so because if a simple breach of contract could form the basis for a UCL claim, then virtually every contract action could be converted into a business tort." *Dillon v. NBCUniversal Media LLC*, No. CV 12-09728 SJO(AJWX), 2013 WL 3581938, at *8 (C.D. Cal. Jun. 18, 2003) (alterations adopted) (internal quotations and citations omitted). The same is true for breaches of the implied covenant. *See Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010). Courts throughout California have therefore routinely dismissed "unlawful" prong claims based on these and other common law violations. *See, e.g., Lyons v. Bank of Am., NA*,

33

No. 11-01232 CW, 2011 WL 3607608, at *11 (N.D. Cal. Aug. 15, 2011); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (affirming dismissal of an "unlawful" prong claim where plaintiff "[did] not go beyond alleging a violation of common law").

The UCL's "unfairness" prong seeks to "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007). However, when—as here—the "alleged victims are neither competitors nor powerless, unwary consumers," the UCL simply has no role to play. *Id.*

Finally, to state a claim under the "fraudulent" prong of the UCL "requires a showing [that] members of the public are likely to be deceived." *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). Plaintiffs have made no such allegation, nor could they—this matter involves private transactions between private parties. Moreover, claims under the "fraudulent" prong must meet Rule 9(b)'s heightened pleading standard, *Patton v. Forest Labs. Inc.*, 793 F. App'x 608, 609 (9th Cir. 2020), and for the reasons set forth above, Plaintiffs' conclusory allegations respecting alleged fraud fall far short of that standard.  *See supra* at 20–22 & §§ II.E–F.  For all of these reasons, Plaintiffs' UCL claim fails as a matter of law and should be dismissed.

**J.    Plaintiffs' Declaratory Relief Claim Fails as a Matter of Law.**

Under both California and New York law, "[c]laims for declaratory relief are not independent causes of action, but rather the ultimate prayer for relief." *Bates v. Suntrust Mortg., Inc.*, No. 2:13-cv-01402-TLN-DAD, 2013 WL 6491528, at *4 (E.D. Cal. Dec. 10, 2013); *see also In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 5225840, at *11 (Bankr. S.D.N.Y. Nov. 9, 2021) ("A request for a declaratory judgment is not an independent cause of action but is rather predicated on the existence and establishment of the other claims."). Plaintiffs' claim for declaratory relief (Count 16) is based wholly on their claims for rescission and copyright

34

infringement, Compl. ¶¶ 225, 228, 226–30. Because both of these claims fail as a matter of law, *see supra* §§ II.A, H, Plaintiffs' declaratory relief claim must also fail. *Bates*, 2013 WL 6491528, at *2 ("A declaratory relief cause of action cannot survive a motion to dismiss when the substantive claims on which it is based are dismissed."); *Ditech Holding*, 2021 WL 5225840, at *11 (same).

But even if the underlying claims were not dismissed, the declaratory relief claim is "wholly duplicative" of those claims. It should therefore be dismissed for this independent reason as well. *Quantum Labs, Inc. v. Maxim Integrated Prod. Inc.*, No. 18-CV-07598-BLF, 2019 WL 1767574, at *4 (N.D. Cal. Apr. 22, 2019) (dismissing with prejudice declaratory relief claim where "wholly duplicative of the underlying causes of action" and "amendment could not cure this deficiency"); *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prod., Inc.*, No. 1:19-CV-3766-GHW, 2021 WL 2534000, at *1 (S.D.N.Y. June 21, 2021) (declining to exercise supplemental jurisdiction over "counterclaim for declaratory judgment" "because it is duplicative of claims and defenses already asserted in this case").

## CONCLUSION

For the foregoing reasons, the Court should grant UMG's motion to dismiss.

Date: November 22, 2024

SIDLEY AUSTIN LLP

By: */s/Rollin A. Ransom*
    Rollin A. Ransom

Attorneys for Defendant
UNIVERSAL MUSIC GROUP, INC.