1  Rollin A. Ransom (SBN 196126)
   rransom@sidley.com
2  Nicole M. Baade (SBN 335703)
   nbaade@sidley.com
3  SIDLEY AUSTIN LLP
4  350 South Grand Avenue
   Los Angeles, CA 90071
5  Telephone: (213) 896-6000
6  Facsimile: (213) 896-6600

7  Attorneys for Defendant
8  UNIVERSAL MUSIC GROUP, INC.

9                    UNITED STATES DISTRICT COURT
10                   CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM FREDERICK DURST, an individual; LIMP BIZKIT; FLAWLESS RECORDS, LLC, a California limited liability company;<br><br>           Plaintiffs,<br><br>      vs.<br><br>UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; and DOES 1 through 20, inclusive,<br><br>           Defendants. | Case No. 2:24-cv-08630-PA-AJR<br><br>Assigned to Hon. Percy Anderson<br><br>**DEFENDANT UNIVERSAL MUSIC GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Action Filed:    October 8, 2024 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 8

ARGUMENT ................................................................................................................... 8

I. The Flip Agreement's Forum Selection Clause Is Applicable ............................ 8

II. Plaintiffs' Rescission Claim Fails as a Matter of Law. ..................................... 10

III. Plaintiffs' Breach of Contract Claims Fail as a Matter of Law ........................ 13

IV. Plaintiffs' Implied Covenant Claims Are Duplicative. .................................... 14

V. Plaintiffs' Fiduciary Duty Claim Fails as a Matter of Law. .............................. 15

VI. Plaintiffs' Fraud Claims Fail Under Rule 9(b) and Rule 12(b)(6). .................. 16

VII. Plaintiffs' Promissory Fraud Claim Fails as a Matter of Law. ......................... 18

VIII. Plaintiffs' Accounting Claim Fails as a Matter of Law. ................................... 18

IX. Plaintiffs' Copyright Claim Fails as a Matter of Law. ...................................... 18

X. Plaintiffs' UCL Claim Fails as a Matter of Law. .............................................. 18

XI. Plaintiffs' Declaratory Relief Claim Fails as a Matter of Law. ........................ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*123 Los Robles LLC v. Metzler*,
  2017 WL 10311210 (C.D. Cal. Aug. 14, 2017) .................................................. 19

*AdTrader, Inc. v. Google LLC*,
  2019 WL 1767206 (N.D. Cal. Apr. 22, 2019) ..................................................... 19

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) ............................................................................. 14

*Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*,
  2019 WL 3066328 (S.D.N.Y. July 12, 2019) ..................................................... 16

*Apple Recs., Inc. v. Capitol Recs., Inc.*,
  137 A.D.2d 50 (1988) ................................................................................. 15, 16

*Aquamen Ent., LLC v. Pigmental, LLC*,
  2017 WL 7806619 (C.D. Cal. May 8, 2017) ..................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 14

*Asoma Corp. v. SK Shipping Co., Ltd.*,
  467 F.3d 817 (2d Cir. 2006) ................................................................................ 9

*AT&T Corp. v. Atos IT Sols. & Servs., Inc.*,
  714 F. Supp. 3d 310 (S.D.N.Y. 2024) ................................................................ 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 14, 15

*Bina v. Abraxas Med. Sols.*,
  2012 WL 12892745 (C.D. Cal. Dec. 19, 2012) .................................................. 17

*Cafferty v. Scotti Bros. Recs., Inc.*,
  969 F. Supp. 193 (S.D.N.Y. 1997) ..................................................................... 11

*Century of Progress Prods. v. Vivendi S.A.*,
  2018 WL 4191340 (C.D. Cal. Aug. 28, 2018) .............................................. 17, 18

DEFENDANT UMG'S REPLY IN SUPPORT OF MOTION TO DISMISS

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
　2015 WL 6638929 (N.D. Cal. Oct. 30, 2015) ....................................................... 19

*Comedy Club, Inc. v. Improv W. Assocs.*,
　553 F.3d 1277 (9th Cir. 2009) ............................................................................. 11

*Cooper v. Sony Recs. Int'l*,
　2001 WL 1223492 (S.D.N.Y. Oct. 15, 2001) ....................................................... 15

*Costello Pub. Co. v. Rotelle*,
　670 F.2d 1035 (D.C. Cir. 1981) ........................................................................... 11

*Crofoot Lumber, Inc. v. Thompson*,
　163 Cal. App. 2d 324 (1958) ............................................................................... 11

*Dunn v. Stringer*,
　41 Cal. App. 2d 638 (1940) ................................................................................. 11

*Elements Spirits, Inc. v. Iconic Brands, Inc.*,
　2015 WL 3649295 (C.D. Cal. June 11, 2015) ..................................................... 11

*Engalla v. Permanente Med. Grp., Inc.*,
　15 Cal. 4th 951 (1997), *as modified* (July 30, 1997) ........................................... 12

*Env't Furniture, Inc. v. Bina*,
　2010 WL 5060381 (C.D. Cal. Dec. 6, 2010) ....................................................... 15

*Epic Off. Sols. LLC v. Epson Am., Inc.*,
　2024 WL 4783838 (C.D. Cal. Sept. 23, 2024) ..................................................... 17

*Faulkner v. Arista Recs. LLC*,
　602 F. Supp. 2d 470 (S.D.N.Y. 2009) ........................................................... 15, 16

*FDIC v. Air Fla. Sys., Inc.*,
　822 F.2d 833 (9th Cir. 1987) ............................................................................... 11

*FFF Enters., Inc. v. Rising Pharma Holdings, Inc.*,
　2024 WL 4972968 (D.N.J. Dec. 4, 2024) ............................................................ 17

*Fredianelli v. Jenkins*,
　931 F. Supp. 2d 1001 (N.D. Cal. 2013) ............................................................... 13

*House of Diamonds v. Borgioni, LLC*,
　737 F. Supp. 2d 162 (S.D.N.Y. 2010) .................................................................. 14

4

*Johnson v. Mazza*,
    2016 WL 11505457 (C.D. Cal. Jul. 5, 2016) ...................................................... 9

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
    528 F. App'x 33 (2d Cir. 2013) ...................................................................... 9

*Lenel Sys. Int'l, Inc. v. Smith*,
    34 A.D.3d 1284 (2006) ................................................................................ 11

*Linear Tech. Corp. v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007) ....................................................................... 19

*Maldonado v. Valsyn, S.A.*,
    2009 WL 3094888 (S.D.N.Y. Sept. 23, 2009), *aff'd*, 390 F. App'x 27
    (2d Cir. 2010) ............................................................................................... 10

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988) .......................................................................... 9

*Maredia v. Philip Morris USA Inc.*,
    2007 WL 2462093 (E.D. Cal. Aug. 27, 2007) ............................................... 13

*Maritime Ventures Int'l v. Caribbean Trading & Fidelity, Ltd.*,
    689 F. Supp. 1340 (S.D.N.Y. 1988) .............................................................. 12

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*,
    2022 WL 18027555 (S.D.N.Y. Dec. 30, 2022) ............................................. 16

*Michel & Pfeffer v. Oceanside Props., Inc.*,
    61 Cal. App. 3d 433 (1976) .......................................................................... 13

*Nolan v. Sam Fox Pub. Co.*,
    499 F.2d 1394 (2d Cir. 1974) ....................................................................... 11

*P4C Glob., Inc. v. Pulse Supply Chains Sol., Inc.*,
    2020 WL 5240627 (C.D. Cal. Aug. 10, 2020) (Anderson, J.) ...................... 14

*Primary Color Corp. v. Agfa Corp.*,
    2017 WL 8220729 (C.D. Cal. July 13, 2017) ................................................. 9

*In re Qintex Ent., Inc.*,
    950 F.2d 1492 (9th Cir. 1991) ...................................................................... 11

*Rano v. Sipa Press, Inc.*,
    987 F.2d 580 (9th Cir. 1993) ............................................................................... 11

*Rattagan v. Uber Techs., Inc.*,
    17 Cal. 5th 1 (2024) ................................................................................... 16, 17

*RR Chester, LLC v. Arlington Bldg. Corp.*,
    22 A.D.3d 652 (2005) ........................................................................................ 11

*Smith v. JPMorgan Chase Bank, N.A.*,
    2014 WL 6886030 (C.D. Cal. Nov. 26, 2014) .................................................. 14

*Stavrinides v. Vin Di Bona*,
    2018 WL 1311440 (C.D. Cal. Mar. 12, 2018) .................................................. 19

*Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ............................................................................. 9

*Symquest Grp., Inc. v. Canon U.S.A., Inc.*,
    186 F. Supp. 3d 257 (E.D.N.Y. 2016) ............................................................... 14

*Tanedo v. East Baton Rouge Parish Sch. Bd.*,
    2012 WL 5447959 (C.D. Cal. Oct. 4, 2012) ..................................................... 12

*Tessera, Inc. v. UTAC (Taiwan) Corp.*,
    2012 WL 1067672 (N.D. Cal. Mar. 28, 2012) .................................................. 13

*TVT Recs. v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ................................................................................ 16

*Underwood v. Prince*,
    2023 WL 2628069 (C.D. Cal. Jan. 26, 2023) .............................................. 11, 12

*Verdugo v. Alliantgroup, L.P.*,
    237 Cal. App. 4th 141 (2015) .............................................................................. 9

*Warren v. Fox Fam. Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ..................................................................... 10, 11

*Wolf v. Super. Ct.*,
    107 Cal. App. 4th 25 (2003) .............................................................................. 16

*Zaitzeff v. Peregrine Fin. Grp., Inc.*,
    2008 WL 11408422 (C.D. Cal. June 23, 2008) ................................................... 9

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................... 14

Fed. R. Civ. P. 9(b) ............................................................................................... 16, 17, 18

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 16

## INTRODUCTION

Plaintiffs do not dispute—because they cannot—that the email chain between their business manager and UMG's Royalties Department [Dkt. No. 20-1] eviscerates the narrative underlying their claims. Rather, Plaintiffs assert that the Court should not consider that chain because their counsel did not see it before drafting the complaint (and instead meant to refer to an "entirely different email chain" that also happened to be between Plaintiffs' manager and UMG, also happened to concern royalties, and also happened to include an email on April 9, 2024, the date of the communication referenced in the complaint). Pls.' Objs. to Def.'s RJN [Dkt. No. 25] at 3–4. While UMG cannot account for the inadequacy of counsel's pre-filing investigation, the parties' dispute over the email chain is ultimately irrelevant: the complaint fails to state a claim regardless of whether the Court considers the email or not.

## ARGUMENT

### I. THE FLIP AGREEMENT'S FORUM SELECTION CLAUSE IS APPLICABLE.

*First*, Plaintiffs argue that the Flip Agreement has been rescinded and the forum selection clause is therefore void. Opposition [Dkt. No. 26] ("Opp'n") at 14. As discussed below, however, Plaintiffs' rescission claim fails as a matter of law (*see infra* § II); regardless, whether it has been validly rescinded is necessarily a dispute that "arise[s] out of the interpretation, performance or breach of [the Flip] Agreement" (Mot. at 16–17), and is therefore a question for a New York court to answer.

*Second*, contrary to Plaintiffs' assertion (Opp'n at 14–15), the Recording Agreement does *not* state that it supersedes or terminates the Flip Agreement—in fact, it states exactly the opposite. *See* Compl. [Dkt. No. 1], Ex. A [Dkt. No. 1-1] ¶ A (Recording Agreement "shall not constitute or be deemed a modification or an extension of the [Flip Agreement]" and is "a new and separate agreement"). While the Recording Agreement acknowledges that the *term* of the Flip Agreement is deemed terminated, it also states that "obligations which survive the end of the term" will survive, *id.*, and the law recognizes that "unless [a] contract explicitly indicates

8

otherwise, a forum selection clause survives termination of the contract." *Zaitzeff v. Peregrine Fin. Grp., Inc.*, 2008 WL 11408422, at *9 (C.D. Cal. June 23, 2008).

*Third*, to the extent Plaintiffs assert that UMG was required to make some showing regarding the convenience of the New York forum (*see* Opp'n at 15–16), the Ninth Circuit has made clear that the burden is instead on the party opposing a mandatory forum selection clause to make "a strong showing" that "extraordinary circumstances *unrelated to the convenience of the parties*" support not enforcing the clause. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (emphasis added). Plaintiffs have not even attempted to make such a showing.[1]

*Fourth*, enforcement of the New York forum selection clause is particularly appropriate here. The Flip Agreement covered Plaintiffs' "first three and most successful records," accounting for the majority of royalties. Compl. ¶¶ 22, 43. In Plaintiffs' cases with conflicting clauses, the clause enforced was the one that covered the bulk of the claims. *Primary Color Corp. v. Agfa Corp.*, 2017 WL 8220729, at *6 (C.D. Cal. July 13, 2017); *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006). Even then, one of Plaintiffs' cases "acknowledges the possibility, which seems . . . quite real, that each clause could apply only to particular claims." *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 528 F. App'x 33, 36 (2d Cir. 2013).

*Fifth*, and finally, because Plaintiffs' tort claims are duplicative of their contract claims, *see infra* § VI, the forum selection clause covers them. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (where tort claims "relate to 'the central conflict over the interpretation' of the contract, they are within the scope of the forum selection clause"). Plaintiffs' cases are in accord. *See, e.g.*, *Johnson v. Mazza*, 2016 WL 11505457, at *3 (C.D. Cal. Jul. 5, 2016) (forum selection clause applies to tort claims that "relate[] to interpretation of the contract").

---

[1] Plaintiffs suggest that enforcement of the forum selection clause would "violat[e] California's public policy" (Opp'n at 16), but they have failed to identify any "unwaivable" *or* "statutory" California right that a New York court would infringe, *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 156 (2015), much less made a "strong showing" in this regard, *Sun*, 901 F.3d at 1088.

## II. PLAINTIFFS' RESCISSION CLAIM FAILS AS A MATTER OF LAW.

*First*, nowhere do Plaintiffs address the requirement under California and New York law that "the breach of a royalty or similar licensing agreement will support rescission only where there has been 'a *total* failure in the performance of the contract,' *i.e.*, where 'the failure to pay royalties is *total*.'" Mot. at 19, *quoting Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993); *Cafferty v. Scotti Bros. Recs., Inc.*, 969 F. Supp. 193, 205 (S.D.N.Y. 1997). This dooms any claim for rescission based on a material breach. *See Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1143 (9th Cir. 2003) (affirming motion to dismiss rescission claim because "alleged failure to pay royalties does not constitute a total failure of performance").

Instead, Plaintiffs assert they rescinded the agreements prior to UMG's August 2024 royalty payments. Opp'n at 17. But this claim *contradicts* the allegations of the complaint, namely, that Plaintiffs served their Notice of Rescission on September 30, 2024, after these payments were made. *See* Compl. ¶¶ 61–62, 69; *see also id.* ¶ 225 (referring to "Plaintiffs' rescission of the Flip Agreement, the Recording Agreement, and the Flawless Agreement on September 30, 2024"); *id.* ¶¶ 75, 215 (same). It is also irrelevant, in light of the millions of dollars of advance payments that Plaintiffs received before August 2024. *See Maldonado v. Valsyn, S.A.*, 2009 WL 3094888, at *4 (S.D.N.Y. Sept. 23, 2009) (denying rescission where plaintiffs "received all of the advances due under the Contracts, which were paid against any royalties earned"), *aff'd*, 390 F. App'x 27 (2d Cir. 2010).[2]

Plaintiffs falsely assert that in "the cases Defendant cites, non-payment of royalties was the ***only*** ground for rescission." Opp'n at 18. As here, those cases included additional breach claims secondary or otherwise related to the non-payment

---

[2] While Plaintiffs contend that the August 2024 payments constitute a small percentage of the amounts they speculate they are owed (Opp'n at 18), their "math" (and related claim that materiality cannot be decided at this juncture) ignores the above binding authority that the non-payment must be *total*; ignores the considerable *additional* advances that they were paid; and ignores that they have not adequately alleged what further royalties are owed in any event (*see* Mot. at 24–25; *infra* § III).

of royalties. *See, e.g.*, *Nolan v. Sam Fox Pub. Co.*, 499 F.2d 1394, 1396–99 (2d Cir. 1974) (found "divers[e] breaches of the contract by [the defendant]," but none "were substantial enough or were so material as to justify rescission by [the plaintiff]"); *Cafferty*, 969 F. Supp. at 205 (failure to account to the plaintiff and pay royalties rejected as bases for rescission); *Warren*, 328 F.3d at 1139 (same); *Rano*, 987 F.2d at 586 (failure to pay royalties and return negatives rejected as bases for rescission).

Finally, Plaintiffs' remaining cases as to their material breach theory: (a) do not involve a rescission claim at all, *e.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009) (cancellation not rescission); *Aquamen Ent., LLC v. Pigmental, LLC*, 2017 WL 7806619, at *5 (C.D. Cal. May 8, 2017) (termination not rescission); *In re Qintex Ent., Inc.*, 950 F.2d 1492, 1497 (9th Cir. 1991) (severability not rescission); (b) involve contracts that are not remotely analogous to royalty or licensing agreements, *e.g.*, *RR Chester, LLC v. Arlington Bldg. Corp.*, 22 A.D.3d 652, 652 (2005) (sale of real property); *FDIC v. Air Fla. Sys., Inc.*, 822 F.2d 833, 840 (9th Cir. 1987) (bankruptcy sale); *Crofoot Lumber, Inc. v. Thompson*, 163 Cal. App. 2d 324, 333 (1958) (timber sale); *Lenel Sys. Int'l, Inc. v. Smith*, 34 A.D.3d 1284, 1285 (2006) (option grant), or (c) are otherwise distinguishable, *e.g.*, *Elements Spirits, Inc. v. Iconic Brands, Inc.*, 2015 WL 3649295, at *6–8 (C.D. Cal. June 11, 2015) (no profit share paid); *Underwood v. Prince*, 2023 WL 2628069, at *5 (C.D. Cal. Jan. 26, 2023) (defendant failed to pay any royalties, and no application of *Rano* standard); *Costello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1045 (D.C. Cir. 1981) (no royalty claim; remanded on various issues); *Dunn v. Stringer*, 41 Cal. App. 2d 638, 642 (1940) (defendant failed to provide anything of value).

*Second*, as to fraudulent inducement, none of Plaintiffs' cases support the proposition that such a claim can be maintained when, as here, there are *no* non-conclusory allegations that UMG did not intend to perform the contract at the time of execution (particularly when UMG indisputably then *did* perform for decades, including investing in the production, release, and promotion of the albums). *See, e.g.*,

*Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974, 976 (1997), *as modified* (July 30, 1997) (affirming fraudulent inducement finding based on pre-contractual evidence that defendant never intended to comply with contractual requirement); *Underwood*, 2023 WL 2628069, at *5 (defendant's pre-contractual statement he would never promote plaintiff "sufficient to show that [defendant] knew his promise to cooperate in promoting Plaintiff's work was false at the time it was made"); *Maritime Ventures Int'l v. Caribbean Trading & Fidelity, Ltd.*, 689 F. Supp. 1340, 1354 (S.D.N.Y. 1988) (pre-contractual evidence that defendant "had virtually no capital" sufficient to raise question of fact whether it intended to perform on contract that "called for payments of several million dollars"). Plaintiffs' conclusory allegations of "fraudulently concealed . . . album sales and royalties" (Opp'n at 20) do not remotely meet the requisite standard. *See Tanedo v. East Baton Rouge Parish Sch. Bd.*, 2012 WL 5447959, at *9 (C.D. Cal. Oct. 4, 2012) (plaintiff must plead more than fact of breach and "that Plaintiffs never intended to perform on the contracts").

*Third*, Plaintiffs' only argument with respect to rescission based on public policy is that it is supported by their UCL claim (Opp'n at 22), and thus fails because that claim fails (Mot. at 33–34; *infra* § X).

*Fourth*, contrary to Plaintiffs' strawman argument (Opp'n at 22), UMG does not argue that Plaintiffs must elect remedies at this stage. Instead, the relevant law establishes that rescission is unavailable at *any* stage "where monetary damages are an adequate remedy." Mot. at 22 (collecting cases dismissing rescission claims). Likewise inapt is Plaintiffs' attempt to bootstrap equitable remedies potentially available for copyright infringement (Opp'n at 22) as that claim is predicated on Plaintiffs prevailing on a valid rescission claim.

*Fifth*, Plaintiffs misapprehend the provisions of the Recording and Flawless Agreements waiving any right to rescission. These provisions clearly state that Plaintiffs' "recovery of any such royalties will be the sole remedy available . . . by reason of *any claim related to Interscope's royalty accountings*" and there is no "right

to termination . . . by reason of such claim." Compl., Ex. A ¶ 11.04 (emphasis added); *id.*, Ex. F [Dkt. No. 1-6] ¶ 17(c)(iii) (emphasis added). Plaintiffs' claims all relate to royalty accountings (Opp'n at 18:21–23), and this language thus forecloses rescission. *See Michel & Pfeffer v. Oceanside Props., Inc.*, 61 Cal. App. 3d 433, 442 (1976) (contractual clause that "extension of time shall be the sole remedy of Subcontractor" "was an advance waiver of any right to rescind") (cleaned up). Moreover, provisions allowing termination of the "*term*" of the agreements (Opp'n at 23)—*i.e.*, periods of time during which Limp Bizkit was required to produce recordings (*see* Compl., Ex. A ¶¶ 1–4; *id.* Ex. F ¶¶ 1(a)(i)–(iii), 2)—are distinct from termination or rescission of the agreements themselves. And where, as here, Plaintiffs have not adequately alleged any fraud (*supra* at 11–12; *infra* §§ VI–VII), the exception for "fraudulently misstated" "item[s] in royalty accounting" is inapplicable. Mot. at 23 n.7.

### III.  PLAINTIFFS' BREACH OF CONTRACT CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs attempt to defend their speculative allegation that they are owed more royalties—based, in Plaintiffs' own words, on their "suspicion" (Opp'n at 24)—with cases in which the defendants had exclusive possession of the relevant financial records. *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1022–23 (N.D. Cal. 2013); *Maredia v. Philip Morris USA Inc.*, 2007 WL 2462093, at *8–9 (E.D. Cal. Aug. 27, 2007). But Plaintiffs' own complaint concedes that UMG has not "denied [Plaintiffs] access to the records," *Maredia*, 2007 WL 2462093, at *8; on the contrary, Plaintiffs have been given access to "the UMG portal" containing detailed royalty statements for Limp Bizkit's accounts (Compl. ¶ 37), and UMG has further acknowledged that Plaintiffs have the explicit right under all three agreements to audit Interscope's books and records to determine whether additional royalties are owed. *See* Mot. at 25. And yet, with all this information available, Plaintiffs have failed to identify a single transaction that would trigger a royalty that has not been paid. Simply put, this fails to state a claim. *See, e.g.*, *Tessera, Inc. v. UTAC (Taiwan) Corp.*, 2012 WL 1067672, at *2 (N.D. Cal. Mar. 28, 2012) (complaint that alleged defendant "owes royalties" but

did "not say what the royalties are owed for" "insufficient to state a claim").[3]

As to the alleged failure to provide royalty statements, Plaintiffs concede that they have only made "conclusory allegations of damages" but assert this is sufficient under Rule 8. Opp'n at 25–26 (citation omitted). All but one case they cite for this proposition, however, predate *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which made clear that each "element[] of a cause of action" must be supported by more than "mere conclusory statements," *id.* at 678, and the case that postdated *Iqbal* erroneously relied on pre-*Iqbal* cases. *See Smith v. JPMorgan Chase Bank, N.A.*, 2014 WL 6886030, at *6 & n.2 (C.D. Cal. Nov. 26, 2014). Plaintiffs have failed to allege any plausible basis for damages resulting from any failure to timely provide royalty statements.

### IV.  PLAINTIFFS' IMPLIED COVENANT CLAIMS ARE DUPLICATIVE.

Plaintiffs' reliance on *House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162, 170 (S.D.N.Y. 2010), is misplaced. Even if "bad faith" is alleged, an implied covenant claim must be dismissed under New York law where, as here, the same allegations underlie both the breach claim and the implied covenant claim. *See, e.g.*, *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 265 (E.D.N.Y. 2016).

Likewise, Plaintiffs' contention that "the same facts can[] support both breach of contract and breach of the implied covenant" (Opp'n at 26–27) is incorrect under California law, as recognized by the Ninth Circuit and this Court. *See, e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 931 n.6 (9th Cir. 2011) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.") (cleaned up); *P4C Glob., Inc. v. Pulse Supply Chains Sol., Inc.*, 2020 WL 5240627, at

---

[3] Plaintiffs do not dispute that the relevant agreements authorize cross-account recoupment (Mot. at 25 n.8), but instead assert that the application of the provisions "raises factual disputes" (Opp'n at 24 n.4). Plaintiffs miss the point. The agreements themselves are attached to complaint and thus cognizable here, and these provisions go directly to the plausibility of Plaintiffs' speculative allegations of breach. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567–68 (2007) (dismissal appropriate where "complaint itself" provides "obvious alternative explanation" to plaintiff's claims).

14
DEFENDANT UMG'S REPLY IN SUPPORT OF MOTION TO DISMISS

*2 (C.D. Cal. Aug. 10, 2020) (Anderson, J.) (same).

Plaintiffs' asserted exceptions to the rule do not apply. Plaintiffs fail to state any tort claims. *See* §§ V–VII, X. And Plaintiffs' conclusory allegation that UMG "unfairly interfered with [Plaintiffs'] right to receive the benefits" of the relevant agreements (Compl. ¶¶ 112, 125, 137) and assertion of "bad faith" (Opp'n at 27) must be supported by plausible factual allegations. *See, e.g.*, *Env't Furniture, Inc. v. Bina*, 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010) ("The point of *Careau* is not that inserting certain language into a complaint will make an implied covenant claim suddenly viable, but that a Plaintiff must allege *facts* establishing the bad faith breach of the implied covenant."). Moreover, Plaintiffs' "complaint itself" provides an "obvious alternative explanation" to bad faith, *Twombly*, 550 U.S. at 567, where UMG "was apologetic" over an error that resulted in the late payment of Plaintiffs' royalties and UMG paid all royalties owed (Compl. ¶¶ 53, 63).[4]

## V. PLAINTIFFS' FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs' effort to defend their fiduciary claim fails. As to New York law, Plaintiffs' reliance on *Apple Recs., Inc. v. Capitol Recs., Inc.*, 137 A.D.2d 50, 57 (1988), is entirely misplaced. As courts have recognized, that case, involving The Beatles' special relationship with its record company, had "unprecedented facts" and "stands as the exception to the general rule that a fiduciary relationship does not exist between recording artists and their record companies" and "is of little precedential value to [any] plaintiffs." *Faulkner v. Arista Recs. LLC*, 602 F. Supp. 2d 470, 481–83 (S.D.N.Y. 2009); *see also, e.g.*, *Cooper v. Sony Recs. Int'l*, 2001 WL 1223492, at *5, n.10 (S.D.N.Y. Oct. 15, 2001) ("Unlike *Apple Records*, here there is no assertion of a special relationship beyond that which normally exists between contracting parties in an arms-length transaction."). In finding a special relationship, *Apple Records* relied primarily on the fact that "at one point the Beatles constituted 25 to 30% of [Capitol

---

[4] The email chain incorporated by reference into the complaint, which demonstrates that UMG "*unilaterally and affirmatively*" reached out to begin paying royalties in 2023 (Mot. at 11, 14, 30), further belies any indication of bad faith.

Records'] business." *Apple Recs.*, 137 A.D.2d at 57. Plaintiffs have asserted nothing of the sort here. *See McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, 2022 WL 18027555, at *11 (S.D.N.Y. Dec. 30, 2022) (distinguishing *Apple Records* on similar grounds). Plaintiffs' allegations do not show "anything other or more than garden-variety arm's length transactions." *Faulkner*, 602 F. Supp. 2d at 483–84.

As to California law, Plaintiffs concede that an agreement to share losses is a necessary element of a joint venture (and thus to support a fiduciary duty), but fail to allege that such an arrangement exists under the Flawless Agreement. *See* Opp'n at 28. On the contrary, the agreement itself—which provides for the payment of millions of dollars in advances to Flawless Records (Compl., Ex. F at ¶ 4(a)–(3))—effectively disavows any loss sharing; if there are net losses on recording agreements subject to the Flawless Agreement, those are borne solely by Interscope. This is exactly the type of agreement that *Wolf v. Super. Ct.*, 107 Cal. App. 4th 25 (2003), characterized as *not* creating a joint venture, *id.* at 28, 32 (agreement included "fixed compensation upon execution of the agreement" and "a percentage of the 'net profits'").

## VI. PLAINTIFFS' FRAUD CLAIMS FAIL UNDER RULE 9(b) AND RULE 12(b)(6).

*First*, Plaintiffs fail to identify "a legal duty independent of the contract itself [that] has been violated," as required under both New York and California law. *Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*, 2019 WL 3066328, at *2 (S.D.N.Y. July 12, 2019) (citation omitted); *see Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 43 (2024) (plaintiff must "allege[] a sufficient factual basis for establishing a duty of disclosure on the part of the defendant independent of the parties' contract"). The allegations that Plaintiffs assert "transcend[] breach of contract" (Opp'n at 30) "directly concern [UMG]'s performance under the [relevant] agreement[s]," *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 334 (S.D.N.Y. 2024), and merely add a motive for UMG's alleged conduct. *Compare* Opp'n at 30:8–11 *with id.* at 30:14–19; *see TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 91 (2d Cir. 2005) (dismissing claim of fraudulent concealment where allegations were about "the

1  motives for the breach"). And Plaintiffs' alleged "system that obscured royalty
2  balances and was designed to withhold funds" (Opp'n at 30) evinces nothing more
3  than a supposed intent not to perform the contract, which is also insufficient. *See Bina*
4  *v. Abraxas Med. Sols.*, 2012 WL 12892745, at *5 (C.D. Cal. Dec. 19, 2012).

5        Moreover, Plaintiffs' California cases ignore a recent decision of the California
6  Supreme Court, which clarified that where "a potential injury stemming from a
7  nondisclosure is . . . within the reasonable contemplation of known risks to the parties
8  before entering into their agreement and the parties accounted for that risk," a party
9  "generally cannot demonstrate that the defendant violated a tort duty independent of
10 the parties' contractual rights and obligations." *Rattagan*, 17 Cal. 5th at 42. That is
11 exactly the circumstance here, where the relevant agreements expressly contemplate
12 possible shortcomings in royalty accounting and payments and provide explicit
13 remedies—the right to audit, coupled with "recovery of any royalties found owing."
14 Compl., Ex. A ¶ 11.03–11.04; *id.*, Ex. B, ¶ 8(c); *id.*, Ex. F ¶ 17(5)(c)(ii)–(iii). And
15 cases have also applied *Rattagan* to misrepresentation claims. *See, e.g.*, *Epic Off. Sols.*
16 *LLC v. Epson Am., Inc.*, 2024 WL 4783838, at *5 (C.D. Cal. Sept. 23, 2024)
17 (dismissing misrepresentation claim where damages "stem from" alleged breach);
18 *FFF Enters., Inc. v. Rising Pharma Holdings, Inc.*, 2024 WL 4972968, at *12 (D.N.J.
19 Dec. 4, 2024) (dismissing misrepresentation claim where "'duty' Plaintiff appear[ed]
20 to allege Defendant breached . . . [was] derived from the terms of the Agreement").

21       *Second*, regardless of the email chain incorporated by reference into Plaintiffs'
22 complaint—which makes Plaintiffs' fraud claims even less plausible (Mot. at 30)—
23 Plaintiffs have failed to meet Rule 9(b)'s heightened pleading standards. Plaintiffs rely
24 on *Century of Progress Prods. v. Vivendi S.A.*, 2018 WL 4191340 (C.D. Cal. Aug. 28,
25 2018), but there, the plaintiff alleged that the defendant had engaged in "improper
26 'bundling' and 'cross-collateralization' of [the movie] with unsuccessful films to hide
27 profits stemming from pertinent [movie] rights," *id.* at *13. Here, in contrast,
28 Plaintiffs do not (and cannot) dispute that the relevant agreements expressly *allow* the

cross-account recoupments they allege as fraud. Mot. at 25 n.8. *Century of Progress* is therefore inapposite on its face. And Plaintiffs' reliance on a potentially relaxed Rule 9(b) standard where "relevant facts remain within the opposing party's knowledge" (Opp'n at 32) is likewise inapplicable here, where Plaintiffs have access to UMG's royalty portal and the right to audit UMG's books and records regarding their accounts. Compl. ¶ 37; Mot. at 25. Nor do Plaintiffs have any rejoinder to the fact that their self-defeating complaint frames their intentional and negligent misrepresentation claims as based only on "suspic[ion]." *See* Mot. at 30. Plaintiffs' fraud claims fail.

### VII. PLAINTIFFS' PROMISSORY FRAUD CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs offer no arguments with respect to their promissory fraud claim other than those raised with respect to their rescission claim (Opp'n at 33), which fail for the reasons discussed (*see supra* at 11–12; Mot. at 20–22).

### VIII. PLAINTIFFS' ACCOUNTING CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs do not dispute that a fiduciary relationship, which Plaintiffs cannot adequately allege (*see supra* § V), is required to establish an accounting claim under New York law. *See* Opp'n at 33 (citing only California cases). Likewise, Plaintiffs do not dispute that the complaint fails to allege the type of special relationship that could give rise to an accounting claim under California law. *See* Mot. at 31; Opp'n at 33.[5] Thus, Plaintiffs accounting claim fails under both New York and California law.

### IX. PLAINTIFFS' COPYRIGHT CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs do not dispute that the copyright claim depends on the rescission claim and must fail if the rescission claim fails, as it does. *See supra* § II. Plaintiffs also do not dispute that they have not alleged registration in their complaint as required. The copyright claim fails for both of these reasons.

### X. PLAINTIFFS' UCL CLAIM FAILS AS A MATTER OF LAW.

As to the unlawful prong, Plaintiffs do not dispute that their breach of contract

---

[5] Moreover, Plaintiffs have not explained why the alleged underpayment of royalties cannot be made certain by calculation when Plaintiffs have access to UMG's royalty portal (Compl. ¶ 37) and the right to audit UMG's books and records (Mot. at 25).

and implied covenant claims cannot support a UCL claim. Mot. at 33–34. Plaintiffs' only argument with respect to that prong is that it can be supported by their fraud and negligent misrepresentation claims. Opp'n at 34–35. Because those claims fail, *see supra* § VI, any claim under the unlawful prong also fails.

As to the unfairness prong, many cases confirm the holding of *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007), that the UCL does not apply where "the alleged victims are neither competitors nor powerless, unwary consumers," *id.* at 135. *See, e.g.*, *123 Los Robles LLC v. Metzler*, 2017 WL 10311210, at *3–4 (C.D. Cal. Aug. 14, 2017) (citing additional cases). And Plaintiffs' cases are inapposite because, unlike here, they involved form contracts and claims beyond the parties' contractual relationship. *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2015 WL 6638929, at *5 (N.D. Cal. Oct. 30, 2015); *AdTrader, Inc. v. Google LLC*, 2019 WL 1767206, at *1–2 (N.D. Cal. Apr. 22, 2019).

As to the fraudulent prong, Plaintiffs have not adequately pled fraud (*see supra* at 11–12, § VI–VII), and Plaintiffs' unsupported invocation of "systemic" fraud (Opp'n at 35) does not constitute deception to "members of the public" in any event.

## XI. PLAINTIFFS' DECLARATORY RELIEF CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs do not dispute that their declaratory relief claim depends on the rescission and copyright infringement claims (Opp'n at 35–36), and must fail if those claims fail, as they do (*see supra* §§ II, IX). In any event, all the issues implicated by Plaintiffs' declaratory relief claim "would necessarily be determined through the adjudication of [P]laintiffs' copyright infringement claim," *Stavrinides v. Vin Di Bona*, 2018 WL 1311440, at *6 (C.D. Cal. Mar. 12, 2018), rendering it duplicative.

Date: December 20, 2024

SIDLEY AUSTIN LLP

By: */s/Rollin A. Ransom*
    Rollin A. Ransom

Attorneys for Defendant
UNIVERSAL MUSIC GROUP, INC.