UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 24-8630 PA (AJRx) | Date | January 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc. | | |

Present: The Honorable  PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| Kamilla Sali-Suleyman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:**   **IN CHAMBERS — COURT ORDER**

Before the Court is a Motion to Dismiss filed by defendant Universal Music Group, Inc. ("Defendant" or "UMG"). (Docket No. 19.) Defendant challenges the sufficiency of the Complaint filed by plaintiffs William Frederick Durst ("Durst"), Limp Bizkit, and Flawless Records, LLC ("Flawless") (collectively "Plaintiffs"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court previously found that this matter is appropriate for decision without oral argument.

**I.    Factual and Procedural Background**

Durst is a performer, controlling member of the rock band Limp Bizkit, and owner of Flawless. Plaintiffs' claims revolve around three agreements. Two of those agreements involve the production, manufacture, and distribution of recordings featuring Limp Bizkit: (1) a July 1996 recording agreement between Durst and other Limp Bizkit band members and Flip Records, Inc. ("Flip Records") (the "Flip Agreement")[1] under which Flip Records, and later Interscope Records ("Interscope"), released the first three Limp Bizkit albums; and (2) a December 2000 recording agreement between Durst and other Limp Bizkit band members, on the one hand, and Interscope, on the other hand (the "Recording Agreement"), under which Interscope released subsequent Limp Bizkit recordings. The Flip Agreement and its amendments provided that Plaintiffs would receive advances on the royalty payments provided for in the Flip Agreement. For instance, the third amendment to the Flip Agreement "provided Limp Bizkit with additional monetary consideration, including an Execution Advance of $7 million . . . ." (Compl. ¶ 20.) The third agreement is a June 1999 "first-look" agreement between (as amended) Flawless and Interscope (the "Flawless Agreement"), pursuant to which Durst was tasked with finding new bands for potential release on Interscope's "Flawless Records" imprint.

---

[1]   The Flip Agreement was amended three times, in September 1996, December 1996, and October 1999.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | January 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc. | | |

    According to the Complaint, in or around early April 2024, Durst retained new representation and explained that he had not received any money from Defendant for any Limp Bizkit exploitations. Plaintiffs' new business manager contacted Defendant on April 9, 2024, stating that Plaintiffs had not received any royalty statements and requested access to UMG's portal to view them. Once Plaintiffs' business manager viewed the portal and discovered that the accounts had balances in excess of $1.1 million, they requested the funds. Defendant responded by requesting that Plaintiffs fill out forms to receive payment. The Complaint also alleges that Defendant failed to provide royalty statements for many periods, including portions of 1997-2004, 2005-2006, 2010, 2011, 2013-2014, and 2015, and that the royalty statements reviewed by Plaintiffs' management suspiciously show unrecouped balances and what Plaintiffs allege are "fraudulent accounting practices."

    On July 15, 2024, counsel for Plaintiffs sent a letter to UMG alleging that UMG had grossly underpaid Plaintiffs with respect to their royalties, had failed to provide accurate royalty statements for all periods in which there were sales of any albums, and apparently seemed to have designed a royalty system that systematically prevented artists from being paid their royalties. Plaintiffs demanded immediate payment, provision of documents, and return of the Limp Bizkit Master Recordings. On August 16, 2024, UMG stated that "payment will be released within the next 1-2 weeks." (Id. ¶ 58.) However, according to the Complaint, because Plaintiffs sent their notice of breach on July 15, 2024, UMG had only thirty days to cure its material breach, and thus it had to make payment of all outstanding royalties, and provide all missing royalty statements, by no later than August 14, 2024, which it indisputably failed to do. On August 24, 2024, Plaintiffs' attorneys emailed UMG's Scott Bauman that UMG had failed to cure the material breaches of the applicable agreements within 30 days, and failed to provide the requested documentation. The notice further provided that, as a result of such material breaches, the agreements are null and void, and any further distributions of the Master Recordings would constitute copyright infringement. On August 26, 2024 (more than 30 days after July 15, 2024), Limp Bizkit received $1,038,321.87 in back royalties from UMG. Flawless Records received $2,348,060 in back profit participation from UMG on August 27, 2024. On September 30, 2024, Plaintiffs served Defendant with a formal Notice of Rescission of the Flip Agreement, the Recording Agreement, and the Flawless Agreement ("Rescission Notice").

    Plaintiffs filed their Complaint in this Court on October 8, 2024. The Complaint alleges claims for: (1) rescission; (2) breach of the Recording Agreement; (3) breach of the Recording Agreement's covenant of good faith and fair dealing; (4) breach of the Flip Agreement; (5) breach of the Flip Agreement's covenant of good faith and fair dealing; (6) breach of the Flawless Agreement; (7) breach of the Flawless Agreement's covenant of good faith and fair dealing; (8) breach of fiduciary duty; (9) fraudulent concealment; (10) intentional misrepresentation; (11) negligent misrepresentation; (12) promissory fraud; (13) accounting;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | January 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc. | | |

(14) copyright infringement; (15) unfair business practices pursuant to California Business and Professions Code § 17200; and (16) declaratory relief regarding copyright rights.

Defendant's Motion to Dismiss asserts that the Flip Agreement contains a forum selection clause requiring any action related to it be filed in New York, and otherwise contends that each of the claims asserted in the Complaint fail to state a claim under the applicable pleading standard.

## II.   Legal Standard

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp. , 108 F.3d 246, 248-49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal quotations omitted). In construing the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | January 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc. | | |

Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

The more stringent pleading requirements of Federal Rule of Civil Procedure 9(b) apply to allegations of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires particularity as to the circumstances of the fraud – this requires pleading facts that by any definition are 'evidentiary': time, place, persons, statements made, explanation of why or how such statements are false or misleading." In re Glenfed, Inc. Securities Litigation, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994); see also Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient.") (citing Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987)).

**III. Analysis**

The parties agree that the viability of the copyright claim, which is the sole basis for the Court's subject matter jurisdiction, depends on whether the Complaint's rescission claim is viable. Indeed, in response to the Court's Order to Show Cause why it should exercise supplemental jurisdiction over the state law claims, Defendant stated that the Court should dismiss the rescission claim for failure to state a claim, dismiss the corresponding claims for copyright infringement and declaratory relief for failure to state a claim since those claims cannot survive without a viable rescission claim, and decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Because the Court's subject matter jurisdiction is based on the copyright claims, which rely on the viability of the rescission claim, the Court must address the viability of the rescission claim to assess the viability of the copyright claims.[2/] Moreover, because at least some portions of the rescission

---

[2/]    For these purposes, the Court has assumed without deciding that the Complaint's sixteenth claim for declaratory relief regarding copyright rights has asserted a federal claim over

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | January 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc. | | |

claim do not relate to the Flip Agreement, Defendant's effort to enforce the Flip Agreement's forum selection clause in favor of a New York forum would not obviate the need for the Court to address the sufficiency of the rescission claim. The Court will therefore first address the sufficiency of the rescission claim.

Plaintiffs seek rescission of contracts that have governed the parties' relationship beginning in 1996 – nearly 30 years – because the agreements should be rescinded as fraudulently induced because Defendant never had any intention to comply with its contractual obligations to pay royalties. "[U]nder federal and state law a material breach of a licensing agreement gives rise to a right of rescission which allows the nonbreaching party to terminate the agreement. After the agreement is terminated, any further distribution would constitute infringement." Rano v. Sipa Press, Inc., 987 F.2d 580, 586 (9th Cir. 1993) (citations omitted). "A breach will justify rescission of a licensing agreement only when it is 'of so material and substantial a nature that [it] affect[s] the very essence of the contract and serve[s] to defeat the object of the parties . . . . [T]he breach must constitute a total failure in the performance of the contract.'" Id. (quoting Affiliated Hosp. Prods., 513 F.2d 1183, 1186 (2d Cir. 1975)).

Here, as alleged in the Complaint, Defendant or its predecessor paid millions in advances on the royalties Plaintiffs were expected to earn and paid substantial sums for the production and distribution of Plaintiffs' recordings as called for in the agreements. But the "alleged failure to pay royalties does not constitute a total failure of performance." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1143 (9th Cir. 2003). The Court therefore concludes that Plaintiffs have not plausibly alleged the type of "substantial" or "total failure" in the performance of the contracts that could support rescission of the parties' agreements. See, e.g., Nolan v. Sam Fox Publ'g Co., 499 F.2d 1394, 1399 (2d Cir. 1974); Maldonado v. Valsyn, S.A., No. 06 CIV. 15290 (RMB), 2009 WL 3094888, at *4 (S.D.N.Y. Sept. 23, 2009) (denying rescission where plaintiffs "received all of the advances under the Contracts, which were paid against any royalties earned").

Plaintiffs alternatively assert that their rescission claim is viable based on either a fraudulent inducement theory or "based on public policy" because it is an available remedy for an unlawful business practice pursuant to California Business and Professions Code § 17200. According to the Complaint, the "public policy" Plaintiffs rely upon is California's "public policy in favor of timely paying workers, including artists, all of their wages compensation, and royalties." (Compl. ¶ 97.) But Plaintiffs cite to no case in which a court, applying California or New York law, has allowed rescission in a case based on the alleged failure to pay all royalties

---

which the Court possesses original jurisdiction pursuant to 28 U.S.C. § 1331.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | January 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc. | | |

due based on a "public policy" exception to the requirement of a substantial or total failure in the performance of the contract. Plaintiffs simply provide no authority that "public policy" would support rescission in a manner contrary to the rule stated by the Ninth Circuit in Rano and Warren where, as here, millions in royalties were advanced and paid under decades-old agreements and Plaintiffs have a contractual remedy available.

Plaintiffs' fraudulent inducement claim relies on the Complaint's allegation that Defendant "fraudulently induced Plaintiffs into the Flip Agreement, the Recording Agreement and the Flawless Agreement by luring them in with promises to pay Plaintiffs significant amounts of royalties and profits, without any intention of actually doing so." (Compl. ¶ 86.) Given that the Complaint alleges that Defendant, or its predecessor, provided Plaintiffs with millions of dollars in royalty advances, and performed other obligations under the contract at significant expense, this conclusory allegation does not satisfy the Twombly pleading standard under Rule 8(a), let alone Rule 9(b)'s heightened pleading standard. Nor have Plaintiffs cited a case that creates an exception to the rule stated in Rano and Warren in similar circumstances.

For all of the foregoing reasons, the Court concludes that Plaintiffs have failed to state a viable rescission claim. As a result, the copyright infringement and declaratory relief claims, which rely on the rescission claim, also fail to state viable claims. On this record, however, the Court cannot conclude that amendment of these claims would be futile. The Court therefore dismisses the Complaint's first, fourteenth, and sixteenth claims with leave to amend. Unless and until Plaintiffs can state a viable claim over which the Court possesses original jurisdiction, the Court declines to address the viability of the remaining state law claims or Defendant's effort to enforce the Flip Agreement's New York forum selection clause.

**Conclusion**

For all of the foregoing reasons, the Court grants the Motion to Dismiss, in part. Specifically, the Court dismisses the Complaint's first, fourteenth, and sixteenth claims with leave to amend. Plaintiffs' First Amended Complaint shall be filed by no later than February 3, 2025. Plaintiffs shall not include any new claims or defendants without first obtaining leave of Court. The Court denies the remainder of the Motion to Dismiss without prejudice to reasserting it should Plaintiffs file a First Amended Complaint. If Plaintiffs do not include the copyright claims in the First Amended Complaint, the Court will decline to exercise supplemental jurisdiction over the remaining claims and will dismiss the action without prejudice. If the First Amended Complaint includes copyright claims, the Court reserves the right to address the issues raised in the Court's November 18, 2024 Order to Show Cause. If Plaintiffs do not file a First Amended Complaint by February 3, 2025, the Court will dismiss the action without prejudice.

IT IS SO ORDERED.