## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | March 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc., et al. | | |

Present: The Honorable   PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| Kamilla Sali-Suleyman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**       **IN CHAMBERS — COURT ORDER**

Before the Court is a Motion to Dismiss filed by defendant Universal Music Group, Inc. ("Defendant" or "UMG").  (Docket No. 31.)  Defendant challenges the sufficiency of the First Amended Complaint ("1st AC") filed by plaintiffs William Frederick Durst ("Durst"), Limp Bizkit, and Flawless Records, LLC ("Flawless") (collectively "Plaintiffs").  With respect to certain of the claims, Defendant also seeks to enforce a forum selection clause contained in one of the agreements involving the parties requiring disputes arising out of that agreement to be litigated in New York.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for March 24, 2025, is vacated, and the matter taken off calendar.

Durst is a performer, controlling member of the rock band Limp Bizkit, and owner of Flawless.  Plaintiffs' claims revolve around three agreements.  Two of those agreements involve the production, manufacture, and distribution of recordings featuring Limp Bizkit: (1) a July 1996 recording agreement between Durst and other Limp Bizkit band members and Flip Records, Inc. ("Flip Records") (the "Flip Agreement")[1/] under which Flip Records, and later Interscope Records ("Interscope"), released the first three Limp Bizkit albums; and (2) a December 2000 recording agreement between Durst and other Limp Bizkit band members, on the one hand, and Interscope, on the other hand (the "Recording Agreement"), under which Interscope released subsequent Limp Bizkit recordings.  The Flip Agreement and its amendments provided that Plaintiffs would receive advances on the royalty payments provided for in the Flip Agreement.  For instance, the third amendment to the Flip Agreement "provided Limp Bizkit with additional monetary consideration, including an Execution Advance of $7 million . . . ."  (1st AC ¶ 49.)  The third agreement is a June 1999 "first-look" agreement between (as amended) Flawless and Interscope (the "Flawless Agreement"), pursuant to which

---

[1/]     The Flip Agreement was amended three times, in September 1996, December 1996, and October 1999.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | March 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc., et al. | | |

Durst was tasked with finding new bands for potential release on Interscope's "Flawless Records" imprint.

According to the 1st AC, in or around early April 2024, Durst retained new representation and explained that he had not received any money from Defendant for any Limp Bizkit exploitations. Plaintiffs' new business manager contacted Defendant on April 9, 2024, stating that Plaintiffs had not received any royalty statements and requested access to UMG's portal to view them. Once Plaintiffs' business manager viewed the portal and discovered that the accounts had balances in excess of $1.1 million, they requested the funds. Defendant responded by requesting that Plaintiffs fill out forms to receive payment. The Complaint also alleges that Defendant failed to provide royalty statements for many periods, including portions of 1997-2004, 2005-2006, 2010, 2011, 2013-2014, and 2015, and that the royalty statements reviewed by Plaintiffs' management suspiciously show unrecouped balances and what Plaintiffs allege are "fraudulent accounting practices."

On July 15, 2024, counsel for Plaintiffs sent a letter to UMG alleging that UMG had grossly underpaid Plaintiffs with respect to their royalties, had failed to provide accurate royalty statements for all periods in which there were sales of any albums, and apparently seemed to have designed a royalty system that systematically prevented artists from being paid their royalties. Plaintiffs demanded immediate payment, provision of documents, and return of the Limp Bizkit Master Recordings. On August 16, 2024, UMG stated that "payment will be released within the next 1-2 weeks." (Id. ¶ 155.) However, according to the 1st AC, because Plaintiffs sent their notice of breach on July 15, 2024, UMG had only thirty days to cure its material breach, and thus it had to make payment of all outstanding royalties, and provide all missing royalty statements, by no later than August 14, 2024, which it indisputably failed to do. On August 24, 2024, Plaintiffs' attorneys emailed UMG's Scott Bauman that UMG had failed to cure the material breaches of the applicable agreements within 30 days, and failed to provide the requested documentation. The notice further provided that, as a result of such material breaches, the agreements are null and void, and any further distributions of the Master Recordings would constitute copyright infringement. On August 26, 2024 (more than 30 days after July 15, 2024), Limp Bizkit received $1,038,321.87 in back royalties from UMG. Flawless Records received $2,348,060 in back profit participation from UMG on August 27, 2024. On September 30, 2024, Plaintiffs served Defendant with a formal Notice of Rescission of the Flip Agreement, the Recording Agreement, and the Flawless Agreement ("Rescission Notice").

Plaintiffs filed their Complaint in this Court on October 8, 2024. The Complaint alleged claims for: (1) rescission; (2) breach of the Recording Agreement; (3) breach of the Recording Agreement's covenant of good faith and fair dealing; (4) breach of the Flip Agreement;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | March 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc., et al. | | |

(5) breach of the Flip Agreement's covenant of good faith and fair dealing; (6) breach of the Flawless Agreement; (7) breach of the Flawless Agreement's covenant of good faith and fair dealing; (8) breach of fiduciary duty; (9) fraudulent concealment; (10) intentional misrepresentation; (11) negligent misrepresentation; (12) promissory fraud; (13) accounting; (14) copyright infringement; (15) unfair business practices pursuant to California Business and Professions Code § 17200; and (16) declaratory relief regarding copyright rights.

    On November 18, 2024, the Court ordered the parties to show cause in writing why the Court should not decline supplemental jurisdiction over the state law claims asserted in the action. Before responding to the Court's Order to Show Cause, Defendant filed a Motion to Dismiss challenging the sufficiency of each of the claims asserted in the original Complaint and seeking to enforce the Flip Agreement's forum selection clause in favor of New York for the claims related to that agreement. In response to the Court's Order to Show Cause why it should exercise supplemental jurisdiction over the state law claims, Defendant asserted that the state law claims substantially predominated over the copyright claim for purposes of 28 U.S.C. § 1367(c)(2), but also stated that the Court could dismiss the rescission claim for failure to state a claim, dismiss the corresponding claims for copyright infringement and declaratory relief[2] for failure to state a claim since those claims cannot survive without a viable rescission claim, and decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). The Court considered the Motion to Dismiss, found the rescission claim failed to state a claim, and dismissed it and the copyright and declaratory relief claims with leave to amend. In ruling on the Motion to Dismiss, the Court explained that it reserved the right to address the issues raised in its November 18, 2024 Order to Show Cause if Plaintiffs filed a 1st AC including copyright claims.

    Plaintiffs 1st AC asserts the same sixteen claims alleged in the original Complaint. The Court's subject matter jurisdiction is still premised on the copyright and declaratory relief claims. The original Complaint was 60 pages long and contained 230 paragraphs. The 1st AC is 120 pages long and contains 449 paragraphs. Among other changes, Plaintiffs have added facts to the 1st AC in support of their rescission claim and now allege that their former business manager, who later became an executive for Defendant, misrepresented aspects of the agreements involved in this action to procure Plaintiff's signatures on those agreements. Defendant has filed a Motion to Dismiss in response to the 1st AC in which it again seeks to

---

[2]    In its Response to the Court's Order to Show Cause, Defendant did not dispute that the declaratory relief claim arises under the Copyright Act and that the Court possesses original jurisdiction over it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | March 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc., et al. | | |

enforce the Flip Agreement's forum selection clause requiring any action related to it be filed in New York, and otherwise contends that each of the claims asserted in the 1st AC fail to state a claim under the applicable pleading standard.

The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173, 118 S. Ct. 523, 534, 139 L. Ed. 2d 525 (1997) (emphasis added) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988)).

In their Response to the Order to Show Cause, Plaintiffs spend considerable effort establishing that the Court possesses supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). The Court's Order to Show Cause, however, assumed that the Court possesses supplemental jurisdiction over the state law claims and instead asked the parties to consider whether the Court should nevertheless decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over those claims. In support of Plaintiffs' contention that the state law claims do not substantially predominate over the federal claims, Plaintiffs state that their "copyright claims are entirely dependent upon, and arise out of the same facts as, the state law claims." Plaintiffs also asserted that judicial economy and convenience supported the continued exercise of supplemental jurisdiction by this Court because the Plaintiffs "will be forced to refile those claims in state court, resulting in potentially litigating this matter across three different courts" if this Court declined to exercise supplemental jurisdiction over the state law claims.

Even where supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1)    the claim raises a novel or complex issue of State law,
>
> (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)    the district court has dismissed all claims over which it has original jurisdiction, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | March 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc., et al. | | |

    (4)    in exceptional circumstances, there are other compelling
        reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "'economy, convenience, fairness, and comity'" that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73, 118 S. Ct. 523, 533, 139 L. Ed. 2d 525 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S. Ct. 614, 623, 98 L. Ed. 2d 720 (1988)); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

    District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." City of Chicago, 522 U.S. at 173, 118 S. Ct. at 534, 139 L. Ed. 2d 525. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" Id. (quoting Cohill, 484 U.S. at 350, 108 S. Ct. at 619, 98 L. Ed. 2d 720).

    The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3), San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the Gibbs values provide compelling reasons for declining jurisdiction in such circumstances." Executive Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1558 (9th Cir. 1994). According to the Ninth Circuit, this "inquiry is not particularly burdensome." Id.

    As have other district courts in similar circumstances, the Court concludes that Plaintiffs' 14 state law claims "substantially predominate" over the copyright claims. See Benson v. Paul, Case No. CV 15-6218 DSF (RAOx), 2015 WL 12806462, at *2 (C.D. Cal. Dec. 16, 2015) (finding that "state law issues predominate over the infringement claim" where the "possibility

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | March 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc., et al. | | |

of any [copyright] infringement is dependent on the resolution of Plaintiff's claims for conversion, fraud, and breach of contract"); Nahat v. Ballet San Jose, Inc., Case No. CV 13-2896 SBA, 2013 WL 5934705, at *4 (N.D. Cal. Nov. 1, 2013) (declining supplemental jurisdiction over state law claims that substantially predominated over a single copyright claim); Coelho v. MRC II Distrib. Co., Case No. CV 11-8913 ODW (JCGx), 2012 WL 424387, at *3 (C.D. Cal. Feb. 8, 2012) (declining supplemental jurisdiction where "Plaintiff's recovery under the contract is independent of the validity of its copyright" and because of "the relative unimportance of the copyright in this dispute" finding that "Plaintiff's six state law claims substantially predominate over the copyright issue").

The Court has not merely conducted a simple numerical analysis in concluding that the 14 state law claims substantially predominate over the two copyright claims. Instead, the Court's conclusion is based on an examination of the various factual and legal issues involved in the various claims. Plaintiffs' breach of contract claims, for instance, focus on what may well be complicated accounting issues during the preceding four years of the statute of limitations to determine what, if anything, Defendant owes Plaintiffs for unpaid royalties arising out of three separate agreements and their respective amendments. This is a different time period and damages analysis than applies to the alleged copyright infringement involving only the time period since in or around the September 2024 declaration by Plaintiffs that they have rescinded the agreements. The rescission claims, on which the copyright claims depend, similarly require an analysis of state law of both New York and California law involving facts and law that are distinct from those necessary to adjudicate the copyright claim. Based on the briefing in support of and in opposition to the Motion to Dismiss the 1st AC, Plaintiffs' effort to rescind the agreements as a result of the alleged fraud committed by their former business manager appears to also raise complex and novel theories for which there is limited controlling legal precedent.

As Defendant has repeatedly asserted, the Flip Agreement contains a forum selection clause in favor of New York. None of Plaintiffs' arguments against enforcement of that clause relate to any fraudulent conduct concerning the inclusion of that clause in the agreement. Based on how Plaintiffs have combined their state law and federal claims involving multiple agreements, at least one of which includes a forum selection clause indicating that this Court is the wrong forum for some of Plaintiffs' claims, it is unlikely that this Court could preside over all of the claims asserted in the 1st AC even if the Court were otherwise inclined to exercise supplemental jurisdiction over the state law claims. Accordingly, there is no loss of judicial economy or convenience arising out of the Court's decision to decline to exercise supplemental jurisdiction over the state law claims. Instead, because of the potential for juror confusion arising out of different legal standards for the state claims, and the overall concerns related to economy, convenience, fairness, and comity, the Court concludes that Plaintiffs' state law claims

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8630 PA (AJRx) | Date | March 17, 2025 |
|---|---|---|---|
| Title | William Durst, et al. v. Universal Music Group, Inc., et al. | | |

substantially predominate over the federal claims asserted in this action.  See 28 U.S.C. § 1367(c)(2).  The Court therefore determines, in an exercise of its discretion, that it will decline to exercise supplemental jurisdiction over the state law claims alleged in Plaintiffs' 1st AC, and dismisses the state law claims without prejudice.[3/]  Defendant's Motion to Dismiss concerning the state law claims is denied as moot.  The Court denies the Motion to Dismiss challenging the sufficiency of the copyright claims.  Defendant shall file its Answer to the copyright claims asserted in the 1st AC by no later than April 7, 2025.

IT IS SO ORDERED.

---

[3/]      Pursuant to 28 U.S.C. § 1367(d), this Order acts to toll the statute of limitations on the state law claims for a period of thirty (30) days, unless state law provides for a longer tolling period.